■ IRA K., Respondent, v FRANCES K., Appellant.—In a habeas corpus proceeding, the wife appeals from a judgment of the Supreme Court, Suffolk County (Campbell, J.), dated October 5, 1984, which granted petitioner husband permanent custody of the parties' two infant children, Tamara and Jeremy, who, at the time of the hearing, were aged seven and four years respectively.

Judgment affirmed, with costs.

It is long established that the paramount consideration in child custody proceedings is the best interests of the child. The Court of Appeals, on more than one occasion, has clearly indicated that although diverse and significant factors, worthy of consideration, may surface, the ultimate controlling and determining standard is the best interests of the child. (see, *Eschbach v Eschbach,* 56 NY2d 167; *Friederwitzer v Friederwitzer,* 55 NY2d 89).

Where the hearing court has conducted a full evidentiary hearing the findings of that court are to be afforded great weight and are not lightly to be set aside (see, *Eschbach v Eschbach, supra*). It takes on added significance when, as here, the hearing encompasses some 5½ days and embraces over 800 pages. It becomes even more compelling when the record of that hearing indicates that the hearing court has permitted, with a fair and even hand, both petitioner and appellant full, free rein to present, explore and explain their respective contentions. Sprinkled throughout the record, for instance, is extended testimony indicating mutual incompatability, accusations of violence by one against the other, heated arguments between mother and daughter, repeated contradictions and self-serving contentions between the parties. The hearing court, searching for findings sufficient to support custody, had to wade through the extensive record, to weigh carefully and evaluate objectively the relative fitness of the respective parents, their characters and their integrity (see, *Eschbach v Eschbach, supra,* at p 173). The court found each parent to be talented, sincere, loving, caring and certainly qualified and competent to take care of the physical needs of the children, but concluded that appellant mother, at least in her courtroom presence, was "a highly nervous, uneasy person, whose emotions may be in turmoil". On the other hand, the husband's demeanor "was calm and reassuring, while projecting an image of an individual with whom one could feel at ease and comfortable". We share the concern of the dissent to the court's irrelevant and unnecessary references to the mother's life-style which fill, in the totality, perhaps a page or two of

this extensive 800-page record. That record clearly refutes the mother's contention that the court was intent on punishing her for that life-style. The hearing court made an extensive, in-depth and even-handed evaluation of the intellectual capabilities and the character and personal traits of both petitioner and appellant. The court concluded that the scales tipped in favor of the father as the proper person to have the decision-making role in the lives of their son and daughter, who can depend on him for security, stability and continuity. This conclusion is amply supported by the record and, as already noted, should be accorded great weight *(see, Eschbach v Eschbach, supra)*. We are extremely reluctant to overturn a Judge's decision which, as here, reflects careful thought and prudent evaluation simply because it contains several expressions of the type we might not ourselves resort to but which otherwise furnish no basis to overturn a thoughtful analysis of vigorously contested issues.

We reject, further, the mother's contention that the hearing court gave undue import to or incorrectly interpreted the testimony of the expert psychiatric witness, Dr. Posner.* The nisi prius court, as trier of fact, is entitled to credit the testimony of expert witnesses which it deems probative and reject the testimony which it determines is lacking in probity *(cf. Bayer v Bayer,* 102 AD2d 879, 880). We find no abuse of discretion in the court's evaluation of the expert testimony.

It is further noted that Tamara, aged seven at the time of the hearing, expressed a preference to reside with her mother. The preference of a child, if freely given, should indeed be considered, but it can hardly be a determinative factor, since a child of such tender years, even one of superior intellect, is hardly capable of intelligently assessing all the factors which must be considered in determining where her best interests lie *(see, Feltman v Feltman,* 99 AD2d 540, 541).

Additionally, we find no error in the court's decision to award petitioner permanent custody of the children even though, in the original petition, only temporary custody had been requested. The record reflects than when the court indicated it would entertain petitioner's application for permanent custody, not only did the appellant not object, but joined in the request.

The record follows:

"THE COURT: All right, you may proceed.

---

* It is interesting that Dr. Posner came into the case as an expert psychiatrist upon the recommendation of appellant's pediatrician.

"MR. BOROWKA [attorney for appellant]: Your honor, first with respect to the motion which was made by petitioner's counsel. This action was commenced by Writ of Habeas Corpus pursuant to Section 70 of the Domestic Relations Law, and as I am sure the Court is familiar, when you have such a proceeding as this, the Court can decide obviously what is the best interests of the children and the fact of *[sic]* one person is the movant is really insignificant. The Court has to consider both parties *[sic]* positions and we have a custody fight here between husband and wife. The request for permanent custody, I think the Court does have the power to grant it, if it sees fit.

*"I would equally request that permanent custody, if it be granted, obviously be granted to the mother in this case"* (emphasis supplied).

In this regard, the case of *Sipos v Kelly* (66 AD2d 1022), cited by appellant wife for the proposition that a court may not properly grant relief without appropriate notice to the parties, is not germane *(see also, Frank v Krauss,* 69 AD2d 1017; *Martens v Martens,* 56 AD2d 594). In neither *Sipos, Frank* nor *Martens* did the parties, after due notice, consent, as here, to the court's granting the relief that was thereafter actually awarded. Hence, there can be no prejudice to the wife at bar and any claim of error in awarding permanent custody must fail *(see,* Domestic Relations Law § 240; CPLR 3017; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3017:6, p 115).

Finally, it is necessary to address the concerns raised by our dissenting colleague. They seem to be fivefold.

(1) The hearing court used the terms "good looking", "paramour" and "condominium love nest" in referring to the mother's life-style and also described her departure from the marital home as a "selfish and impetuous flight from the marital residence". While it is true that we might not ourselves utilize some of this outworn and archaic terminology, those few words provide no basis for the overthrow of an otherwise painstaking and detailed analysis of an 800-page record by a Judge who had the parties before him. We are still obligated to accord very substantial deference to the hearing court's findings and the few objectionable terms mentioned do not warrant a new trial.

(2) Two court-appointed psychiatrists believed there was no "contraindication" to continuing custody with the mother. We have already referred to the brief recommendation of these

psychiatrists, who declared that since the parents' allegations could not be corroborated, there was no contraindication to continuing the mother's custody pending judicial determination. Since the psychiatrists were mistaken and custody was not then with the mother, the recommendation lacked any probative significance.

(3) In camera, the child Tamara expressed a preference for the mother. Although our dissenting colleague acknowledges that "the wishes of so young a child" as Tamara can never be determinative of custody issues, she faults the trial court for not following those wishes.

(4) Dr. Posner was the "father's partisan expert witness". Actually, Dr. Posner came into the case upon the recommendation of the mother's pediatrician. While we are aware that retainer-based bias frequently pervades the testimony of expert witnesses, it is for the trier of the facts to decide the weight to be given. Dr. Posner had a negative view of the mother's character and found the father to be a calmer person with concern for the children. It was not reversible error for the trial court to give weight to his testimony.

(5) The post-decision stipulation between the parties fixing visitation and other rights contradicts the hearing court's holding. While the stipulation is dehors the record and should not enter into our deliberative process, we cannot agree that it affords any basis for a new hearing in any event, for what it does is flesh out how the parties will deal with their children. Parents should be encouraged to resolve their problems by civilized agreement, as has been done here. We are extremely loathe to deliver any message that an agreement between the parties as to possession, education and other crucial custodial aspects is a reason for an appellate tribunal to declare that there should be a new hearing, renewed warfare and hostilities and the expenditure of more legal fees.

We cannot agree that the focus of our scrutiny should be the struggle for possession between the mother and the father. The hearing court attempted to focus on the best interests of the children; our focus is entirely on that issue. We see no reason to overthrow the hearing court's determination; no benefit will flow from a new hearing and there is no need for one. Lazer, J. P., O'Connor and Niehoff, JJ., concur.

Kooper, J., dissents and votes to reverse the judgment appealed from and order a new hearing before a different Judge, with the following memorandum.

In a custody decision replete with such phrases as "par-

amour" and "love nest", and from which more relevant phrases such as "the best interests of the children" are conspicuous by their absence, the conclusion is inescapable that the award of custody to petitioner father was the result of the hearing court's palpable disapproval of the life-style of the mother.

The parties in the instant case had been married for nearly 13 years at the time of the commencement of the action for divorce in 1984. There are two children of this marriage, Tamara, approximately seven years old at the time of the hearing, and Jeremy, approximately four years old at that time.

The parties agreed that, for several years prior to the initiation of divorce proceedings, the marriage had been unharmonious in the extreme, marred by intense arguments. Petitioner further admitted at the hearing that he struck his wife on three or four occasions; on another occasion, he struck a wall of the marital home so violently that the plaster needed to be repaired. There was evidence that some of these incidents were witnessed by the children.

In January 1984, appellant mother informed petitioner that she was involved with another man, and the discord and arguments increased. Realizing that the atmosphere in the home was unhealthy for the children, appellant asked petitioner to leave the home, but he refused. Appellant then began to look for another place to live that would also be able to accommodate the children.

Recognizing then, in early 1984, that the breakup of the marriage was imminent, both parties retained attorneys and attempted to work out the issues of custody and visitation, but those attempts were unsuccessful. Finally, in March of 1984, the mother found a condominium which was both large enough and with sufficient facilities so that she would be able to have her children with her; she then moved out of the marital home and into the new premises, which she shares with Dick W.

Initially, the parties attempted to work out matters in accordance with an informal, joint custody arrangement, whereby each parent would have the children at his or her residence for part of each week. This arrangement failed, however, and in July 1984 petitioner father brought the instant habeas corpus proceeding seeking *temporary* custody of the children until such time as a "dependable arrangement for sharing custody of the children" could be developed. The

hearing at issue here, therefore, originated as one to determine *temporary* custody, as well as to determine other issues, including support. Nevertheless, near the end of petitioner's case, and, in fact, during his testimony, petitioner moved to amend the relief sought from temporary to permanent custody. There can be no question but that the motion took appellant by surprise, and that her attorney's late request for an award of permanent custody in her favor was simply an attempt to protect his client's interest. Following the hearing, nisi prius awarded petitioner father custody of the two children of the parties and granted visitation to appellant mother on three weekends per month.

I find that this decision should be reversed for the simple reason that it was not based upon the best interests of the children involved, which is, of course, the recognized standard in custody cases *(see, Eschbach v Eschbach,* 56 NY2d 167; *Friederwitzer v Friederwitzer,* 55 NY2d 89). Instead, it is clear that the instant decision was grounded upon the hearing court's disapproval of appellant mother and her life-style.

At the very outset, in fact, in the second sentence of its decision, the hearing court states that all of the testimony taken at this lengthy hearing "added very little to the simple theme that the mother, Frances K., found her spouse, Ira, to be dull, boring and sexually inadequate because he was not an ardent or skillful lover". Certainly it is incorrect to view appellant's dissatisfaction with her personal relationship with petitioner as a central "theme" of this custody proceeding, which was presumably to be concerned with discovering what arrangements would be in the best interests of these children. This expressed view of nisi prius is particularly troublesome since it appears that, in reality, exceedingly little testimony was taken on this purported "theme"—only about four pages out of nearly 780 pages of testimony. Further manifestations of the hearing court's disapproval are found elsewhere in the opening paragraphs of the decision, which are almost wholly devoted to a discussion of appellant's personal life, referring, for example, to her "good looking" "paramour", and their "condominium love nest", as well as to other facts totally irrelevant to the issue of custody, such as said "paramour's" wife and family. The decision culminates in the hearing court's finding that, although both parents are fit to care for the children, "the scale tips" in favor of petitioner father because of appellant mother's "selfish and impetuous flight from the marital residence". The facts adduced at the hearing, however, established that appellant's "flight" was neither

selfish nor impetuous, but the result, in the face of a disintegrated marriage, of several months' search for an apartment that would allow her to have her children with her; the hearing court's reasoning is certainly indicative of an attempt to improperly punish appellant mother for ending the marriage.

There are additional indications that the award herein was based not upon the best interests of the children but upon the hearing court's disapproval of appellant mother. For example, the 7½-year-old daughter of the parties expressed a desire, in camera, to live with her mother. Certainly, the wishes of so young a child can never be determinative, but in this case it is worth noting that virtually every witness, including the child's teachers from the Long Island School for the Gifted, testified to the fact that Tamara is an exceptionally bright, intelligent child, who apparently has an I.Q. in the 160's. Nevertheless, nisi prius disposed of the child's preference to live with her mother in one sentence, stating that Tamara did not "live up to" her reputation during the court's interview, and that she had been "coach[ed]" by her mother. The hearing court did not note any factors which led to its conclusion that the child had been coached, however, and it is clear from the record that Tamara had expressed the same preference on at least two prior occasions.

Further, prior to the hearing both petitioner and appellant were examined by two objective, court-appointed psychiatrists, who found that both parents appeared to be capable of raising the children and that there were no "contraindications" for continued custody in appellant mother, who, at that time, had de facto custody. These examinations are never even mentioned in the decision of nisi prius. The hearing court instead relied wholly upon petitioner father's partisan expert witness, Dr. Posner, a virtually retired psychiatrist whose credentials nisi prius rather candidly acknowledged, were "not * * * impressive". Dr. Posner, who was not a child psychiatrist, was also something of a professional witness, having testified nearly 50 times in one two-year period. Despite these problems, however, nisi prius chose to credit Dr. Posner's testimony, and its reason for doing so is noteworthy. The hearing court stated that "[m]uch weight is given to his [Dr. Posner's] opinions because they confirm to a great extent our impression of Mrs. K". However, the hearing court then inaccurately restated the testimony upon which it relied. For example, the hearing court stated that Dr. Posner "described [Mrs. K.] as having a narcissistic disorder with manifestations of grandiose

fantasy". This is incorrect. The record shows that Dr. Posner made no such finding, but stated only that "[t]here is a suspicion in my mind, and you must understand that I did not have an interview with her long enough to confirm it, that she has what is known as a 'Narcissistic personality disorder' ". Dr. Posner could not even give a definition of this type of disorder himself, but had to read one, verbatim, from a diagnostic manual, and it is from that definition that nisi prius obtained the "grandiose fantasy" language.

The hearing court also referred to Dr. Posner's "copious notes" of his interviews with the parties and their children. With respect to appellant, however, these "copious notes" actually consist of one sheet of paper, written on both sides. Read into the record, that page of notes was hardly supportive of the negative conclusions drawn by the doctor. The hearing court also noted that "Dr. Posner's examination of the parties reveals bitter arguments between mother and daughter over violin practice", but, in fact, this self-serving statement was merely one relayed to Dr. Posner by petitioner, his client, and is supported by no objective testimony. Moreover, although Dr. Posner testified at the hearing that Mr. K., whom he had never seen interact with the children, was better suited to be the custodial parent, his notes seem to suggest that joint custody is preferable.

Additionally, the record makes it clear beyond cavil that it is appellant, and not petitioner, whose work schedule was the better adapted to meet the needs of the children on a daily basis. Although both parties testified at great length about this important and practical consideration, discussion of it is, nevertheless, entirely absent from the decision of nisi prius.

Finally, although dehors the record, it is mentioned in petitioner's reply brief and must be noted in passing that the parties themselves recognized that the award of custody in the instant case was not in the best interests of these children since, shortly after the decision, the parties stipulated, *inter alia,* that the appellant mother was to have "visitation" with the children Monday through Friday of every week, plus every fourth weekend, and that petitioner father was to have "custody" of these children on the remaining weekends. Although the terms "custody" and "visitation" are retained in the stipulation, the fact is that the parties have otherwise totally reversed the very scheme set out by nisi prius in its decision. Thus, the ultimate, anomalous result of the decision herein is that appellant mother has all the daily cares and responsibilities of the children, but it is called "visitation", and petitioner

father, who has much less contact with the children and none of the responsibilities attendant to daily care, is yet considered the custodial parent.

While, admittedly, great weight must be given to the findings of the hearing court, less deference should be given where, as here, the prejudice against one party is so palpable. Therefore, I would reverse and grant a new hearing, before a different Judge.