(October 19, 1988)

■ FELICE VALENZA, Respondent, v STELLA VALENZA, Appellant.—In an action for a divorce and ancillary relief, the defendant wife appeals (1) from an order of the Supreme Court, Queens County (Zelman, J.), dated May 9, 1988, which denied her motion for recusal of the presiding Trial Justice from further participation in this action, and (2) as limited by her brief, from so much of an order of the same court, dated May 24, 1988, as granted her motion for pendente lite visitation with her child only to the extent of permitting two supervised hours per week at the Family Court.

Ordered that the order dated May 9, 1988 is reversed, without costs or disbursements, the motion is granted, the current proceedings are terminated, and the matter is remitted to the Supreme Court, Queens County, for a trial on the issues of permanent custody, visitation, and equitable distribution before a different Justice; and it is further,

Ordered that the order dated May 24, 1988 is reversed insofar as appealed from, without costs or disbursements, the defendant wife's motion for pendente lite visitation is granted to the extent that, pending final determination of the issues, she shall have visitation with the child from 6:00 P.M. Friday until 6:00 P.M. Sunday on alternate weekends, as well as each week from 5:00 P.M. Wednesday until 5:00 P.M. Thursday, to commence on the first Friday or Wednesday, whichever is earlier, following service upon the plaintiff of this decision and order with notice of entry; and it is further,

Ordered that the child's Law Guardian shall make suitable arrangements for the transportation of the child to and from these visits.

This divorce action was commenced in July 1986 by the

plaintiff husband against the defendant wife while the defendant was under indictment for having attempted to murder the plaintiff. Following a hearing on April 7 and 8, 1987, the defendant entered into a stipulation which granted temporary custody pendente lite to the plaintiff and provided that the defendant would have supervised visitation with the child for two hours twice a week at the Family Court. However, following a confrontation between the parties' families at the courthouse, the court, by order dated May 20, 1987, suspended visitation pending a psychiatric evaluation of the wife to be held before June 15, 1987. The defendant, on advice of counsel, refused to submit to a psychiatric examination in the parties' divorce action while the criminal proceedings were pending.

Following the acquittal of the defendant on all criminal charges against her, she immediately moved for an order granting her, *inter alia*, temporary custody of the parties' infant issue. In response to the defendant's motion, the court appointed a psychiatrist, Dr. Alan Levy, to evaluate the defendant in the presence of the child to determine whether and how much visitation should be allowed. Dr. Levy conducted the interview on January 29, 1988, and reported to the court on February 5, 1988 that during the visit the boy had warmed quite rapidly to the defendant, that the defendant and her child had been mutually affectionate, and that it was apparent during their 45-minute interview that the defendant and her son had "a very normal" and loving relationship.

It was Dr. Levy's opinion that it would be in the child's best interest to have further contact with the defendant and develop "a good and affectionate relationship with both parents", since he loved and needed them both. Dr. Levy, who was aware of the fact that the defendant had been tried and acquitted for the attempted murder of her husband, testified that he knew of no reason why there should be no contact between the defendant and her son, and opined that the boy would benefit from contact with his mother, particularly if the father's family stopped "pulling on this child to pull away from her". Dr. Levy considered that the ideal situation for the child would be "a sharing arrangement of some kind," "even some sort of coparenting" by the father and mother in their respective homes. Even though the continued hostility between the two parents would be detrimental to the child, it was Dr. Levy's opinion that "the good that would come out of it would override". Dr. Levy answered affirmatively when

asked whether the child needed visitation with his mother "in order to obtain emotional health for himself".

The court-appointed Law Guardian also deplored the lack of "meaningful visitation" between the defendant and the child, and recommended that the frequency of their visits be increased.

The trial court, however, completely disregarded the recommendations of its own appointed experts, and issued a series of individual orders permitting only supervised visits of two hours' duration per week in the courthouse of the Family Court, Queens County, between the defendant and the child. The defendant appeals, *inter alia,* from the order dated May 24, 1988, which so restricted her visitation. On appeal, the defendant urges that such restricted visitation is not supported by the evidence in the record. We agree.

While the determination of a hearing court in a custody or visitation proceeding is entitled to great respect *(Eschbach v Eschbach,* 56 NY2d 167; *Ira K. v Frances K.,* 115 AD2d 699), "[a]n appellate court would be seriously remiss if, simply in deference to the finding of a Trial Judge, it allowed a custody [and/or visitation] determination to stand where it lack[ed] a sound and substantial basis in the record" *(Matter of Gloria S. v Richard B.,* 80 AD2d 72, 76). Such is the case here. It is well established that in custody/visitation disputes, the issue of paramount concern is the ultimate best interest of the child *(Friederwitzer v Friederwitzer,* 55 NY2d 89; *Matter of Nehra v Uhlar,* 43 NY2d 242). This standard does not appear to have been the determining factor in the decision of the hearing court in the instant case *(Skolnick v Skolnick,* 142 AD2d 570). Dr. Levy testified unequivocally that the "child loves both parents and needs them both to participate in his raising" for the sake of his physical as well as emotional health. This testimony should have been taken into account by the hearing court in evaluating the child's best interests *(Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938).

It has been held that a noncustodial parent and her child "enjoy a natural right of visitation" *(Daghir v Daghir, supra,* at 193), and that to be meaningful such visitation must be "frequent and regular" *(Daghir v Daghir, supra,* at 194). This natural right of visitation jointly enjoyed by the noncustodial parent and the child is more precious than any property right *(Biamby v Biamby,* 114 AD2d 830), and it may not be denied absent a showing that visitation would be inimical to the child's welfare *(Resnick v Zoldan,* 134 AD2d 246).

There is no testimony or other evidence in the record that contradicts the opinion of the court-appointed expert, Dr. Alan Levy, that the defendant sincerely loved her son, that the son could be "very affectionate with his mother", that the two "had a very normal relationship", and that the defendant should share equally in Joseph's upbringing. Moreover, although the defendant has in the past exhibited violent hostility towards her husband, it is her contention that such behavior was provoked, and in any event "no correlation was made between defendant's behavior toward [the] plaintiff * * * and [her] behavior toward the child" (Janousek v Janousek, 108 AD2d 782, 784).

To the extent that the child has manifested some negative feelings towards the defendant, they appear to have been deliberately inculcated by the father, so that the occasional expression by the child of a disinclination to see his mother cannot be viewed as decisive (Bubbins v Bubbins, 136 AD2d 672). As has repeatedly been held: "so jealously do the courts guard the relationship between a noncustodial parent and [her] child that any interference with it by the custodial parent has been said to be 'an act so inconsistent with the best interests of the [child] as to, per se, raise a strong probability that the [offending party] is unfit to act as custodial parent' " (Daghir v Daghir, 82 AD2d 191, 194, supra, quoting Entwistle v Entwistle, 61 AD2d 380, 384-385, appeal dismissed 44 NY2d 851). We strongly admonish the parties that, in the best interest of their son, they should each forego any conduct, speech or activity which would instill in their son feelings of hostility towards either parent.

Finally, in the best interests of the child and all others concerned, the defendant's motion for recusal of the Trial Justice should have been granted given the inordinate delay in proceeding with this matter, as well as the demonstrated hostility of the Trial Justice toward the defendant. Mollen, P. J., Kunzeman, Rubin and Eiber, JJ., concur.