■ In the Matter of ROBERT T. F., Respondent, v ROSEMARY F., Appellant.—In a child custody proceeding pursuant to Family Court Act article 6, the appeal is from an order of the Family Court, Orange County (Mishkin, J.), entered June 12, 1987, which, after a hearing, granted the petition and transferred custody of the parties' children from the appellant mother to the petitioner father.

Ordered that the order is reversed, on the law and the facts, and the petition is denied, without costs or disbursements.

The petitioner father and the appellant mother were married on May 22, 1971, and they have two children, Melinda, born on October 12, 1974, and Valerie, born on February 13, 1976. The parties were divorced by a judgment dated July 2, 1984. Pursuant to the terms of the judgment, the mother was granted custody of the two children and the father was granted liberal visitation. In December 1986, the father applied for custody of the children. After a hearing, the Family Court issued an order granting the petition and transferring custody from the mother to the father.

In determining whether a custody award should be modified, the paramount issue before the court is whether the totality of the circumstances warrants a modification in the best interests of the child *(Friederwitzer v Friederwitzer,* 55 NY2d 89; *Walden v Walden,* 112 AD2d 1035). Courts making custody determinations have to weigh several factors of varying degrees of importance, including the original placement of the child, the length of that placement, the child's desires, the relative fitness of the parents and any abduction, elopement or defiance of legal process *(Friederwitzer v Friederwitzer, supra,* at 94). In addition, the court must look to the quality of the home environment, the parental guidance given the child, the parent's financial status, his or her ability to provide for the child's emotional and intellectual development, and the presence of siblings *(Eschbach v Eschbach,* 56 NY2d 167, 172-173).

Any custody determination depends to a very great extent upon the court's assessment of the credibility of the witnesses and of the character and temperament of the parents, and, therefore, the findings of the hearing court are generally to be

accorded the greatest respect *(Eschbach v Eschbach, supra,* at 167; *see also, Matter of Irene O.,* 38 NY2d 776; *Ira K. v Frances K.,* 115 AD2d 699). However, the authority of the Appellate Division in matters of custody is as broad as that of the trial court *(Matter of Louise E. S. v W. Stephen S.,* 64 NY2d 946), and we would be seriously remiss if, simply in deference to the findings of the hearing court, we allowed a custody determination to stand where it lacked a sound and substantial basis in the record *(Matter of Gloria S. v Richard B.,* 80 AD2d 72). Thus, notwithstanding the deference to be accorded the findings of the Family Court on review, in the instant case, the court's determination to transfer custody to the father must be reversed as lacking a sound and substantial basis in the evidence presented.

Expert testimony by the family therapist treating the parties' then 12-year-old daughter Melinda at a residential psychiatric hospital, and who saw Melinda on a daily basis, established that the child suffered from severe depression and significant psychopathology characterized by difficulties controlling her impulses and her anger. As a result, she frequently became angry and, on occasion, became assaultive. The hospital records show Melinda to be a frequently unmanageable child prone to violent angry outbursts alternating with periods of withdrawn depression. Most important, the expert testified that the cause of Melinda's emotional problems was not attributable to the parents' marital discord.

While the record leaves no doubt that the appellant was experiencing difficulties in dealing with Melinda, the record also leaves no doubt that Melinda was a difficult child to deal with on a daily basis and that her behavior caused stress to her mother and her sister. Thus, there is no support in the record for the conclusion of the Family Court Judge that the mother's travail was due to her own deficiencies. Nor is there any support for the suggestion in the decision that Melinda's institutionalization was somehow precipitated by her mother's inability to cope. Rather, the record clearly shows that the mother was a concerned and interested parent, attending to the child's emotional needs by seeking professional help and attempting to provide proper parental supervision.

Moreover, based on the total picture of Melinda's emotional condition that emerges from the record, there is no evidence to support the Family Court's implicit determination that the father was more fit to manage the child's disturbed behavior than was the appellant. The father's contact with Melinda was limited to every other weekend, during which time they

engaged exclusively in enjoyable activities such as ice skating and shopping. The girls did not bring homework to do, and, further, there was no evidence that they had any responsibilities in their father's house. Thus, the father's home was decidedly and artificially free of the stress and conflict that is inherent in day-to-day life. Even so, the father testified that the children were uncommunicative during their visits and the father's fiancée testified that Melinda slept excessively.

In addition, the father did not manifest an interest in the children's education or medical needs, as he failed to communicate with their school or their therapists at any time subsequent to an October 1985 order of the Family Court which denied the father's first petition for a change in custody.

The court's conclusion as to the relative fitness of the parties is not supported by the weight of the evidence. In addition, the court failed to consider other relevant factors which, the cases teach, must be weighed. Glaringly absent from the record is any evidence as to the father's plans for his children's schooling in New York City, particularly Melinda's, given her special needs. Also absent is any consideration of the 1985 court order which, based upon a psychiatric evaluation of the family advising against a change in custody, continued custody with the mother. More importantly, there is no evidence that the court gave thoughtful consideration to the effect a change of custody would have upon the precarious emotional health of Melinda.

Finally, we note that the court placed undue emphasis on its in camera interviews with the youngest daughter, Valerie. While the expressed preference of a child is a factor to be considered (*Eschbach v Eschbach,* 56 NY2d 167, *supra*), particularly when that expression is freely given (*Ira K. v Frances K.,* 115 AD2d 699, *supra*), it is by no means determinative (*Dintruff v McGreevy,* 34 NY2d 887). The court must not lose sight of the child's age and vulnerability to be influenced by the noncustodial parent. Based on the record at bar, there existed the strong possibility that the father was exerting pressure on the children to declare their allegiance to him. The petition conceded that he began discussing a change of custody with his daughters in October 1985 and discussed it continuously until the present custody petition. Furthermore, a close reading of the transcript of the interview with Valerie, who was only 11 years old at the time, indicates that Valerie's statement was due more to her desire to be with Melinda, who got along with her father more than her mother, than any real favoritism for her father. Contrary to the court's finding,

Valerie's wishes are not determinative in this case "because a child of 11 is not mature enough to weigh intelligently the factors necessary to make a wise choice as to her custody" *(Feltman v Feltman,* 99 AD2d 540, 541). Lawrence, J. P., Rubin, Eiber and Balletta, JJ., concur.