■ In the Matter of MICHAEL B. CATHOLIC CHILD CARE SOCIETY OF THE DIOCESE OF BROOKLYN, Respondent; MAGGIE L. et al., Appellants; MARVIN B., Respondent.—In a proceeding pursuant to Social Services Law § 384-b to terminate parental rights, the Law Guardian appeals from (1) an order of the Family Court, Kings County (Pearce, J.), dated September 26, 1990, which denied her motion for a custody hearing to determine the best interests of the child prior to his discharge to the natural father, (2) an order of the same court, dated November 15, 1990, which denied her motion for reargument, and (3) a resettled order of the same court, also dated November 15, 1990, which reiterated the denial of the motion for a custody hearing to determine the best interests of the child prior to his discharge to the natural father. The intervenor foster parents separately appeal from the resettled order dated November 15, 1990. The intervenor foster parents' notice of appeal from the order dated September 26, 1990, is deemed to be a premature notice of appeal from the resettled order dated November 15, 1990.

Ordered that the appeal by the Law Guardian from the order dated September 26, 1990, is dismissed, without costs or disbursements, as that order was superseded by the resettled order dated November 15, 1990; and it is further,

Ordered that the appeal from the order dated November 15, 1990, which denied reargument is dismissed, without costs or disbursements, as no appeal lies from an order denying reargument; and it is further,

Ordered that the resettled order dated November 15, 1990, is reversed, as a matter of law, without costs or disbursements, and the matter is remitted to the Family Court, Kings County, for a custody hearing to determine the best interests of the child, to be conducted within 20 days of the date of this decision and order; and it is further,

Ordered that pending the hearing and new determination, the child shall remain with his father.

The subject of this proceeding is five-year-old Michael B., who was born on July 29, 1985, with a positive toxicology for cocaine. Immediately after his birth, Michael was voluntarily placed in foster care by his natural mother, who is now deceased. On November 8, 1985, Michael was placed in the home of the appellants Maggie and Quinton L. who are foster parents certified by the petitioner Catholic Child Care Society of the Diocese of Brooklyn. Michael B. continuously resided with the foster parents until December 14, 1990. In May of

1987, the agency charged with Michael's care commenced the instant proceeding against his natural father, Marvin B. On August 22, 1988, Marvin B. admitted allegations that he had permanently neglected his son, and, upon the consent of the parties, the Family Court suspended judgment for one year pursuant to Family Court Act § 631. Under the terms of the suspended judgment, the natural father was required, *inter alia,* to attend a parenting skills program and to submit to periodic drug testing. Following the conclusion of the one-year period, the Family Court determined that the natural father had substantially complied with the terms and conditions of the suspended judgment, and ordered the child discharged to him.

On appeal, Michael's Law Guardian and foster parents contend that the Family Court erred in discharging Michael to his father without conducting a custody hearing to determine whether a change of custody would be in the best interests of the child. We agree. Where a child has been voluntarily placed in foster care, the Family Court is "vested with continuing jurisdiction over the child until there has been a final disposition of custody" *Matter of Sheila G.,* 61 NY2d 368, 389; *see,* Social Services Law § 392; *Matter of Jamie M.,* 63 NY2d 388, 395). Thus, the dismissal of a permanent neglect petition, whether accomplished by an outright dismissal, or, as at bar, by the expiration of a suspended judgment, does not divest the Family Court of jurisdiction over the child until there has been a disposition of custody consonant with the best interests of the child *(see, Matter of Sheila G., supra; Matter of Jamie M., supra).* In view of the extraordinary circumstances present in this case, the Family Court should have conducted a hearing to consider, among other things, the impact that a change of custody will have on the child in view of the bonding which has occurred between Michael and his foster parents, who have raised him since infancy. It is, therefore, necessary to remit this matter for a hearing and a custody determination to be made in accordance with Michael's best interests *(see, Matter of Sheila G., supra; Matter of Bennett v Jeffreys,* 40 NY2d 543, 550; *Matter of Jonathan D.,* 62 AD2d 947).

We find, however, that the foster parents, who have appeared in this proceeding since its inception, are equitably estopped from challenging the natural father's paternity. In this regard, we note that although the foster parents were fully aware that Marvin B. had been recognized by the court and all parties concerned as Michael's father since his first

appearance in this proceeding in June of 1987, and that Marvin B. had been named as Michael's father by his natural mother, they nevertheless waited until November 1989 to raise the issue of paternity. Accordingly, as a matter of policy, and in order to preserve the integrity of these proceedings, the foster parents are equitably estopped from relitigating this issue (see, Lowinger v Lowinger, 125 AD2d 370).

Finally, since Michael was discharged to his father's care on December 14, 1990, and the Law Guardian concedes that it would be disruptive to move him at this time, we direct that pending the hearing and new determination, the child shall remain with his father. Brown, J. P., Sullivan, Eiber and O'Brien, JJ., concur.