Bellacosa, J.
(concurring). I agree with Judge Kaye’s opinion for the Court that Social Services Law § 392 (6) (b) cannot be used to award permanent custody to foster parents within that statute’s intended operation and integrated structure. I concur in the reversal result in this case solely for that reason, noting additionally that a contrary interpretation of that key provision, as used by the Appellate Division, would have internally contradictory implications in the field of temporary foster child placement. While I prefer an affirmance result because that might more likely conclude the litigation and allow Michael B., the 7½-year-old subject of this custody battle, to get on with his life in a more settled and constructive way, I can discern no principled route to that desirable result without sacrificing the correct application of legal prin *319 ciples and engendering fundamentally troublesome precedential consequences.
This separate concurrence is necessary to express my difference of degree and analytical progression with respect to the best interests analysis and test, as adopted by the Court, for purposes of the remittal of this case and as the controlling guidance for countless other proceedings in the future. I would not relegate Matter of Bennett v Jeffreys (40 NY2d 543) essentially to general relevance only, would not limit the beginning of the analysis to the statutory setting, and would allow for appropriate flexibility as to the range and manner of exercising discretion in the application of the best interests test by the Family Courts and Appellate Divisions.
I believe courts, in the fulfillment of the parens patriae responsibility of the State, should, as a general operating principle, have an appropriately broad range of power to act in the best interests of children. We agree that the teachings of Matter of Bennett v Jeffreys (40 NY2d 543, supra) are still excellent and have served the process and the affected subjects and combatants in custody disputes very well. While the common-law origination in Bennett is a distinguishing feature from the instant case, I do not view that aspect as subordinated to or secondary in the use of its wisdom, even in a predominantly statutory setting, where this case originates. I am not persuaded that there is any support or positive authority for the view that the Legislature meant anything different when it adopted the phrase "best interest of the child” in Social Services Law § 392 (6) from the meaning of that phrase articulated in Matter of Bennett v Jeffreys (supra). Courts must exercise common-law authority in all these circumstances, and the Legislature has not, as far as I can tell, displaced that uniquely judicial function and plenary role. Since the best of Matter of Bennett v Jeffreys’ best interest analysis enjoys continued vitality therefore, it should serve as a cogent, coequal common-law building block. In my view, it provides helpful understanding for and intertwined supplementation to the Social Services Law provisions as applied in these extraordinary circumstances, defined in one aspect of Matter of Bennett v Jeffreys as "prolonged separation” of parent and child "for most of the child’s life” (40 NY2d, at 544, supra). The child in that case was eight years of age and none of the other serious and disquieting features of this case were apparent there.
*320 The nuances, complexity and variations of human situations make the development and application of the general axiom— best interests of the child — exceedingly difficult. As a matter of degree and perspective, however, the Court’s test is concededly more limiting than Matter of Bennett v Jeffreys (supra), and therefore I believe it is more narrow than it should be in this case since I discern no compelling authority for the narrower approach. This 7½-year-old child, born of a long since deceased crack-cocaine mother, has yet to be permanently placed and has suffered a continuing, lengthy, bad trip through the maze of New York’s legal system. His father has an extended history of significant substance addiction and other problems, and the child has spent much of his 7½ years with the same foster parents. These graphic circumstances surely present an exceptionally extraordinary and compelling case requiring significant flexibility by the courts in resolving his best interests (see, Matter of Bennett v Jeffreys, supra). On this aspect of the case, therefore, I agree with the Appellate Division in its two decisions in this case, at least with respect to its best interests analysis and handling of this difficult case. On March 18, 1991, it said:
"In view of the extraordinary circumstances present in this case, the Family Court should have conducted a hearing to consider, among other things, the impact that a change of custody will have on the child in view of the bonding which has occurred between Michael and his foster parents, who have raised him since infancy. It is, therefore, necessary to remit this matter for a hearing and a custody determination to be made in accordance with Michael’s best interests (see, Matter of Sheila G., supra; Matter of Bennett v Jeffreys, 40 NY2d 543, 550; Matter of Jonathan D., 62 AD2d 947).” (171 AD2d 790, 791.)
After the proper, broad, "pure” Matter of Bennett v Jeffreystype best interests hearing was held in Family Court, the Appellate Division on February 24, 1992 added in the order now before us:
"In light of the lengthy period of time during which Michael resided with and psychologically bonded to his foster parents and given the potential for emotional as well as physical harm to *321 Michael should permanent custody be awarded to his natural father, we find that the requisite extraordinary circumstances are present (see, Matter of Bennett v Jeffreys, 40 NY2d 543, 545), and conclude that the best interests of this child will be served by allowing him to return to his foster parents.
"In view of the testimony presented during the best interests hearing, this court concludes that Michael’s natural father is incapable of giving him the emotional support so vital to his well-being (see, Matter of Bennett v Marrow, 59 AD2d 492). The testimony presented by Dr. Sullivan and Mr. Falco indicated that an emotional void still existed between Michael and his father despite the eight to nine months during which they resided together prior to the best interests hearing and that this void showed no signs of being bridged.” (180 AD2d 792, 795-796.)
In sum, I cannot agree that the important and pervasive legal axiom "best interests of the child” is or was meant to be as constricted as it is in the Court’s application to this case. The governing phrase and test even in this statutory scheme ought to be as all-encompassing as in Matter of Bennett v Jeffreys (40 NY2d 543, supra), despite the difference in the procedural origin and setting of the two cases. The approach I urge, not unlike that of the Appellate Division in this respect, better serves the objectives of finality and certainty in these matters, more realistically takes into account the widely varying human conditions, and allows the Family Courts to achieve more uniformity and evenness of application of the rules. That is a better way to promote the best interests of this youngster with reasonable finality and the best interests of all others affected by the operation of these rules.
Chief Judge Wachtler and Judges Simons, Titone and Hancock, Jr., concur with Judge Kaye; Judge Bellacosa concurs in result in a separate opinion; Judge Smith taking no part.
Order reversed, etc.