■ In the Matter of TIFFANY A. SOCIETY FOR SEAMEN'S CHILDREN et al., Respondents; JANE M. SPINAK, Appellant. CARO-

LINE L. et al., Intervenors-Appellants. [662 NYS2d 796] —In a proceeding pursuant to Social Services Law § 384-b to terminate the parental rights of the respondent parents, the intervenors-appellants and the Law Guardian appeal from a dispositional order of the Family Court, Queens County (De Phillips, J.), dated December 6, 1996, which after a fact-finding hearing at which the respondents made admissions of permanent neglect, dismissed the proceeding and released the child, Tiffany A., to the custody of her biological mother.

Ordered that the dispositional order is reversed, on the law and as a matter of discretion in the interest of justice, without costs or disbursements, the proceeding is reinstated, and the matter is remitted to the Family Court, Queens County, for a new dispositional hearing in accordance herewith before a different Judge.

The child at the center of the instant appeal, Tiffany, was born April 12, 1992, with a positive toxicology for cocaine, and suffering from fetal alcohol syndrome. Tiffany was premature at six and one-half months gestational age, and weighed less than three pounds. The mother, an admitted alcohol abuser and crack addict, abandoned Tiffany at the hospital. She has lost custody of her four other children.

Tiffany's premature birth and in utero exposure to alcohol and cocaine caused her to be afflicted with numerous physical and developmental difficulties. Since July 1992 Tiffany has been under the care of the intervenors-appellants who served as her foster parents and who seek to adopt her. By all accounts, she has made remarkable progress and has thrived in their care.

To her credit, the mother has likewise made significant progress towards improving her life. She entered a drug rehabilitation program in 1994 and drug and alcohol testing has revealed that she has not used either substance. She has been in therapy, has taken parenting classes, and reportedly has made remarkable strides.

When the instant petition was filed in 1994, the petitioner, The Society for Seamen's Children, desired to terminate the parental rights of both parents so as to free Tiffany for adoption by the intervenors-appellants. However, in recognition of the mother's achievements in overcoming her dependencies on drugs and alcohol, as well as generally becoming a more responsible adult, the agency changed its planning goals and at the time of the dispositional hearing in March 1995, it sought to withdraw its petition and release Tiffany to the mother's custody. The Law Guardian opposed the withdrawal

of the petition and the court denied the agency's application. Significantly, the father, who had custody of two other children of the mother, favored Tiffany's adoption by the foster parents and consented to a termination of his parental rights conditioned upon Tiffany being adopted by them. If the adoption was not to go forward, then the father requested custody rather than have Tiffany return to the mother.

The dispositional hearing was conducted over more than 40 dates between March 1995 and July 1996. During that time the mother was given increasingly more frequent visitation with Tiffany. Prior to and during the dispositional hearing the mother's visitation had increased to the point that by May 1995 Tiffany was spending one night every other week in the mother's care. By November 1995 Tiffany was staying with the mother from Monday to Friday, including overnight stays, and was returning to the foster home only on weekends.

In a lengthy decision and order the Family Court dismissed the petition and ordered that Tiffany be returned to the mother's full-time custody and care. The court reviewed the evidence adduced at the dispositional hearing at great length and concluded that in light of the mother's progress, her parental rights should not be terminated. Notwithstanding that the court periodically made reference to Tiffany's best interests, it is clear that the court did not conduct an even-handed balancing of whether Tiffany would be better served by being adopted by the foster parents rather than being returned to the mother. Rather than employing a pure "best interests" analysis, the court, apparently in recognition of the mother's achievements, invoked the extraordinary circumstances test of *Bennett v Jeffreys* (40 NY2d 543) and the factually inapposite *Matter of Michael B.* (80 NY2d 299). The court essentially ignored its own finding of permanent neglect and determined that because the mother was not guilty of "persisting neglect", or of continuing parental unfitness, the primacy of her parental rights compelled a finding that Tiffany should be left in the mother's care. The court's analysis, however, is seriously flawed.

The Family Court's reliance upon *Matter of Michael B.* (80 NY2d 299, *supra*) is misplaced. There the father consented to a finding of permanent neglect which was later suspended for 12 months to give him the opportunity to satisfy various conditions designed to improve his parenting and render him a suitable custodian. As the 12-month period neared an end, the agency sought court intervention because, *inter alia*, it was of the opinion that the father had not complied with the condi-

tions imposed. The court, however, found that there had been substantial compliance and ultimately discharged Michael to his father's custody. On appeal, this Court reversed and directed that a hearing be held to determine whether it was in Michael's best interest to be placed in his father's custody (*Matter of Michael B.*, 171 AD2d 790). The Family Court conducted a best interest hearing on remittitur and upheld its award of custody to Michael's father. On the appeal of that order, this Court again reversed, and awarded custody to the foster parents (*Matter of Michael B.*, 180 AD2d 792).

By the time *Michael B.* reached the Court of Appeals, the issue to be decided was the scope of the best interest analysis "in the context of temporary care placements" pursuant to Social Services Law § 392 (6) (*Matter of Michael B.*, 80 NY2d, *supra*, at 308). In that context the Court of Appeals determined that the biological parent possessed a superior right to custody, one which is subject to State interference only in cases of abandonment or unfitness.

By way of contrast, the instant matter does not concern a temporary care placement, but is a termination proceeding pursuant to Social Services Law § 384-b. There have been admissions which resulted in fact-finding orders of permanent neglect as against both parents (*see,* Social Services Law § 384-b [4] [d]). As such, the Family Court had three dispositional alternatives (*see,* Family Ct Act § 631): dismissal of the petition (Family Ct Act § 631 [a]; § 632), suspension of judgment for up to one year (Family Ct Act § 631 [b]; § 633), or the termination of parental rights and the commitment of the custody and guardianship of the child to the agency so that she may be adopted (Family Ct Act § 631 [c]; § 634). Whatever dispositional alternative is chosen, the statute directs that it "shall be made *solely* on the basis of the best interests of the child" (Family Ct Act § 631 [emphasis supplied]). The legislative policy expressed in Social Services Law § 384-b (1) (a) (ii) favoring, in general, a child's remaining in the natural home, in no way contradicts the express statutory mandate provided in Family Court Act § 631, that no presumption favoring the biological parent shall impact any particular disposition made *after* a finding of permanent neglect. Moreover, the Court of Appeals has explicitly directed the same standard in *Matter of Star Leslie W.* (63 NY2d 136, 147-148), where it held: "Unlike a fact finding hearing which resolves the issue of permanent neglect and in which the best interests of the child play no part in the court's determination, the court in the dispositional hearing must be concerned only with the best interests of the

child. There is no presumption that those interests will be served best by return to the parent".

The Family Court thus improvidently exercised its discretion by awarding custody of Tiffany to the mother on the basis of the mother's rehabilitation without adequately considering whether Tiffany's best interests would nevertheless be better advanced by terminating parental rights and awarding custody and guardianship to the foster parents.

Clearly, the Family Court possessed the discretion to fashion a dispositional order returning Tiffany to her mother if such an alternative was consistent with Tiffany's best interest. Notwithstanding the admissions of neglect, the court could have suspended judgment so as to enable the mother to continue with her rehabilitation and to demonstrate her ability to be an effective parent subject to terms and conditions ensuring Tiffany's safety (*see, Matter of Michael B.,* 80 NY2d 299, *supra; Matter of Society for Seamen's Children [Juda J.] v Jennifer J.,* 208 AD2d 849). The court did not do so. Rather, the court dismissed the petition after utilizing a flawed analysis which conferred upon the mother, as a biological parent, a presumption that her biological ties to Tiffany were entitled to greater consideration. Where, as here, there have been fact-finding orders of permanent neglect, the court may not simply dismiss the petition based upon its conclusion that the mother has now gained the ability to become an effective parent without also determining, after a careful balancing of all relevant evidence, that it would be in Tiffany's best interest that her custody be returned to the mother. This is not a statutorily-authorized dispositional alternative.

On the instant record, we cannot sustain the Family Court's determination under a pure best interest analysis. The evidence simply does not demonstrate that it is in Tiffany's best interests to be released to the custody of her mother. The evidence adduced at the dispositional hearing overwhelmingly demonstrates the undeniable fact that the foster parents are far better qualified to respond to, and address, Tiffany's special needs; they have been successfully fulfilling this role since shortly after Tiffany's birth. Certainly, as the hearing progressed and the mother enjoyed increased contacts with Tiffany, the mother began assuming greater child-rearing responsibilities. Nevertheless, it was also established that the mother would require long-term therapy, and that the potential existed for a relapse to her former ways. In this regard, the court-appointed psychologist opined that the mother's depression, personality disorders, dependent personality type, and

history of being herself an abused child, caused her to be a poor parenting risk; clearly an inferior choice to the foster parents who had demonstrated their abilities to successfully raise Tiffany.

Significantly, the Family Court was unduly persuaded by the testimony of the mother's substance abuse counselor, a certified social worker who possessed no expertise in matters of child care and who had never even met Tiffany, much less observed Tiffany's interaction with the mother. This witness testified primarily as to the mother's personal achievements in freeing herself from her drug and alcohol dependencies. However, notwithstanding that the mother has apparently made impressive strides towards becoming a responsible adult, the overwhelming weight of the evidence adduced at the dispositional hearing clearly demonstrates that the foster parents have been, and continue to be, the custodians who have been responsible for Tiffany's continued growth and well-being, and who are best suited to foster Tiffany's continued progress. They have cared for her and provided for the majority of the medical treatments and therapies Tiffany has needed as a result of her status as a premature infant exposed to drugs and alcohol in utero. They have provided her with a loving home in which Tiffany has become a bonded, integral family member. The mother, on the other hand, is, at best, learning to become a suitable parent for the first time in five attempts. Laudable though her achievements may be, the evidence clearly demonstrates that the foster parents are the superior custodians. Tiffany's well-being is too important to gamble that the mother will continue to progress and will not relapse (*see, Matter of St. Vincent's Servs. [Joseph Bernard H.] v Jean H.,* 211 AD2d 799).

Inasmuch as the Appellate Division has broad discretion to make its own factual findings in custody matters and need not defer to the findings of the hearing court where they lack a sound and substantial basis in the record (*see, Matter of Robert T.F. v Rosemary F.,* 148 AD2d 449), we find that on the instant record Tiffany's best interests would *likely* better be served by terminating the parental rights of both the mother and the father so as to enable the intervenors-appellants to adopt her. We stop short of granting the relief requested by the prospective adoptive parents, however, because we discern a need for further inquiry under the circumstances presented.

As noted, Tiffany has been living with her mother five days of each week since at least November 1995, returning to her foster family only on weekends. This arrangement has contin-

ued during the pendency of this appeal which, despite multiple orders granting it preferences, was delayed for reasons beyond our control. Accordingly, Tiffany has been in the mother's care and custody for nearly two years now; more than one year since the conclusion of the dispositional hearing. Any final determination of Tiffany's custody and guardianship must necessarily be made following further proceedings to ascertain her current status (*see, Matter of David Michael J.,* 206 AD2d 867), and a dispositional order predicated solely on her best interests (Family Ct Act § 631) must be rendered with alacrity. Accordingly, we remit this matter to the Family Court, Queens County, for an expedited dispositional hearing before a different Judge. Miller, J. P., O'Brien, Santucci and Altman, JJ., concur.