OPINION OF THE COURT
Kaye, J.
This appeal from a custody determination, pitting a child’s foster parents against his biological father, centers on the meaning of the statutory term "best interest of the child,” and particularly on the weight to be given a child’s bonding with his long-time foster family in deciding what placement is in his best interest. The biological father (appellant) on one side, *304 and respondent foster parents (joined by respondent Law Guardian) on the other, each contend that a custody determination in their favor is in the best interest of the child, as that term is used in Social Services Law § 392 (6), the statute governing dispositions with respect to children in foster care.
The subject of this protracted battle is Michael B., born July 29, 1985 with a positive toxicology for cocaine. Michael was voluntarily placed in foster care from the hospital by his mother, who was unmarried at the time of the birth and listed no father on the birth certificate. Michael’s four siblings were then also in foster care, residing in different homes. At three months, before the identity of his father was known, Michael —needing extraordinary care — was placed in the home of intervenor Maggie W. L., a foster parent certified by respondent Catholic Child Care Society (the agency), and the child remained with the L.’s for more than five years, until December 1990. It is undisputed that the agency initially assured Mrs. L. this was a "preadoptive” placement.
Legal proceedings began in May 1987, after appellant had been identified as Michael’s father. The agency sought to terminate the rights of both biological parents and free the child for adoption, alleging that for more than a year following Michael’s placement the parents had failed to substantially, continuously or repeatedly maintain contact with Michael and plan for his future, although physically and financially able to do so (Social Services Law § 384-b [7]). Michael’s mother (since deceased) never appeared in the proceeding, and a finding of permanent neglect as to her was made in November 1987. Appellant did appear and in September 1987 consented to a finding of permanent neglect, and to committing custody and guardianship to the agency on condition that the children be placed with their two godmothers. That order was later vacated, on appellant’s application to withdraw his pleas and obtain custody, because the agency had not in fact placed the children with their godmothers. In late 1987, appellant — a long-time alcohol and substance abuser — entered an 18-month residential drug rehabilitation program and first began to visit Michael.
In August 1988, appellant, the agency and the Law Guardian agreed to reinstatement of the permanent neglect finding, with judgment suspended for 12 months, on condition that appellant: (1) enroll in a program teaching household management and parenting skills; (2) cooperate by attending and *305 complying with the program; (3) remain drug-free, and periodically submit to drug testing, with test results to be delivered to the agency; (4) secure and maintain employment; (5) obtain suitable housing; and (6) submit a plan for the children’s care during his working day (see, Family Ct Act § 631 [b]; § 633). The order recited that it was without prejudice to the agency recalendaring the case for a de nova hearing on all allegations of the petition should appellant fail to satisfy the conditions, and otherwise said nothing more of the consequences that would follow on appellant’s compliance or noncompliance.
As the 12-month period neared expiration, the agency sought a hearing to help "determine the status and placement of the children.” Although appellant was unemployed (he was on public assistance) and had not submitted to drug testing during the year, Family Court at the hearing held October 24, 1989 was satisfied that "there seem[ed] to be substantial compliance” with the conditions of the suspended judgment. Because the August 1988 order was unclear as to who had responsibility for initiating the drug tests, the court directed that the agency arrange three successive blood and urine tests, and if the tests proved negative, "all subject children may be released to father except Jemel [a 'special needs’ child].” The matter was adjourned to December 21, when it was joined with respondents’ application for a dispositional order with respect to Michael, whose long residence with the L.’s, they said, raised special concerns.
On December 21, 1989, the Law Guardian presented a report indicating that Michael might suffer severe psychological damage if removed from his foster home, and argued for a "best interests” hearing pursuant to Matter of Bennett v Jeffreys (40 NY2d 543), based on Michael’s bonding with the L.’s and, by contrast, his lack of bonding with appellant, who had visited him infrequently. Family Court questioned whether it even had authority for such a hearing, but stayed the order directing Michael’s discharge to appellant pending its determination. Michael’s siblings, then approximately twelve, eight, seven and six years old, were released to appellant in January and July 1990. Litigation continued as to Michael.
In November 1990, Family Court directed Michael’s discharge to appellant, concluding that it was without "authority or jurisdiction” to rehear the issue of custody based on the child’s best interest, and indeed that Michael had been wrong *306 fully held in foster care. The court noted, additionally, that the Law Guardian’s arguments as to Michael’s best interest went to issues of bonding with his temporary custodians rather than appellant’s insufficiency as a parent — bonding that had been reinforced by the agency’s failure to ensure sufficient contacts with appellant during the proceedings. Appellant "should not be denied custody simply because of the actions of the [agency] and the lengthy litigation following final disposition has resulted in the foster parents enjoying a stronger emotional tie to the child than the [appellant].” The court directed that Michael commence immediate weekend visitation with appellant, with a view to transfer within 60 days. Michael was discharged to appellant in December 1990.
The Appellate Division reversed and remitted for a new hearing and new consideration of Michael’s custody, concluding that dismissal of a permanent neglect petition cannot divest Family Court of its continuing jurisdiction over a child until there has been a "best interests” custody disposition (171 AD2d 790). As for the relevance of bonding, the Appellate Division held that, given the "extraordinary circumstances” (Matter of Bennett v Jeffreys, 40 NY2d, at 544, supra) — referring particularly to Michael’s long residence with his foster parents — Family Court should have conducted a hearing to consider issues such as the impact on the child of a change in custody. There having been no question of appellant’s fitness, however, the Appellate Division permitted Michael to remain with his father pending the new determination.
On remittal, Family Court heard extensive testimony — including testimony from appellant, the foster parents, the agency (having changed its goal to discharge to appellant), and psychological, psychiatric and social work professionals (who overwhelmingly favored continued foster care over discharge to appellant) — but adhered to its determination that Michael should be released to his father. Family Court found appellant "fit, available and capable of adequately providing for the health, safety and welfare of the subject child, and * * * it is in the child’s best interest to be returned to his father.”
Again the Appellate Division reversed Family Court’s order, this time itself awarding custody to the foster parents under Social Services Law § 392 (6) (b), and remitting the matter to a different Family Court Judge solely to determine appellant’s visitation rights (180 AD2d 792). Exercising its own authority —as broad as that of the hearing court — to assess the credibil *307 ity of witnesses and character and temperament of the parents, the court reviewed the evidence and, while pointing up appellant’s many deficiencies, significantly stopped short of finding him an unfit parent, as it had the power to do. Rather, the court looked to Michael’s lengthy stay and psychological bonding with the foster family, which it felt gave rise to extraordinary circumstances meriting an award of custody to the foster parents. According to the Appellate Division, the evidence "overwhelmingly demonstrate^] that Michael’s foster parents are better able than his natural father to provide for his physical, emotional, and intellectual needs.” (180 AD2d, at 794.) Since early 1992, Michael has once again resided with the L.’s.
While prolonged, inconclusive proceedings and seesawing custody of a young child — all in the name of Michael’s best interest — could not conceivably serve his interest at all, we granted appellant father’s motion for leave to appeal, and now reverse the Appellate Division’s central holdings. The opinions of Family Court specifying deficiencies of the agency and foster parents, and the opinions of the Appellate Division specifying inadequacies of the biological parent, leave little question that the only blameless person is the child. But rather than assess fault, our review will address the legal standards that have twice divided Family Court and the Appellate Division, hopefully minimizing recurrences, for this child and others, of the tragic scenario now before us.
Analysis
Appellant no longer disputes that Family Court retained jurisdiction to consider the child’s best interest in connection with an award of custody even after the finding that he had substantially satisfied the conditions of the suspended judgment. All parties agree with the correctness of the Appellate Division determination that, despite appellant’s apparent compliance with the conditions of the suspended judgment, Family Court retained jurisdiction to consider the best interest of the children in foster care until a final order of disposition (171 AD2d, at 791; Social Services Law § 392 [6], [9]; Matter of Sheila G, 61 NY2d 368, 389).[1]
What remains the bone of contention in this Court is the *308 scope of the requisite "best interest” inquiry under Social Services Law § 392 (6). Appellant urges that in cases of foster care, so long as the biological parent is not found unfit — and he underscores that neither Family Court nor the Appellate Division found him unfit — "best interest of the child” is only a limited inquiry addressed to whether the child will suffer grievous injury if transferred out of foster care to the biological parent. Respondents, by contrast, maintain that extraordinary circumstances — such as significant bonding with foster parents, after inattention and even admitted neglect by the biological parent — trigger a full inquiry into the more suitable placement as between the biological and foster parents. Subsidiarily, appellant challenges the Appellate Division’s outright award of custody to the foster parents, claiming that disposition was beyond the Court’s authority under Social Services Law § 392 (6).
We conclude, first, that neither party advances the correct "best interest” test in the context of temporary foster care placements, but that appellant’s view is more consistent with the statutory scheme than the broad-gouge inquiry advocated by respondents and applied by the Appellate Division. Second, we hold that the award of custody to the foster parents was impermissible as we interpret Social Services Law § 392 (6).
The Foster Care Scheme
This being a case of voluntary placement in foster care — a subject controlled by statute — analysis must begin with the legislative scheme, which defines and balances the parties’ rights and responsibilities. An understanding of how the system is designed to operate — before the design is complicated, and even subverted, by human actors and practical realities — is essential to resolving the questions before us.
New York’s foster care scheme is built around several fundamental social policy choices that have been explicitly declared by the Legislature and are binding on this Court (Social Services Law § 384-b [1]). Under the statute, operating as written, appellant should have received the active support of both the agency in overcoming his parental deficiencies and the foster parents in solidifying his relationship with Michael, *309 and as soon as return to the biological parent proved unrealistic, the child should have been freed for adoption.
A biological parent has a right to the care and custody of a child, superior to that of others, unless the parent has abandoned that right or is proven unfit to assume the duties and privileges of parenthood, even though the State perhaps could find "better” parents (Social Services Law § 384-b [1] [a] [ii]; Matter of Male Infant L., 61 NY2d 420, 426; Matter of Sanjivini K., 47 NY2d 374, 382; Matter of Corey L v Martin L, 45 NY2d 383, 391). A child is not the parent’s property, but neither is a child the property of the State (Matter of Sanjivini K., 47 NY2d, at 382, supra [citing Pierce v Society of Sisters, 268 US 510, 535; and Stanley v Illinois, 405 US 645]). Looking to the child’s rights as well as the parents’ rights to bring up their own children, the Legislature has found and declared that a child’s need to grow up with a "normal family life in a permanent home” is ordinarily best met in the child’s "natural home” (Social Services Law § 384-b [1] [a] [i], [ii]).
Parents in temporary crisis are encouraged to voluntarily place their children in foster care without fear that they will thereby forfeit their parental rights (Social Services Law § 384-a; Matter of Mehl, 114 Misc 2d 55, 60). The State’s first obligation is to help the family with services to prevent its break-up, or to reunite the family if the child is out of the home (Social Services Law § 384-b [1] [a] [iii]; Santosky v Kramer, 455 US 745, 748). While a child is in foster care, the State must use diligent efforts to strengthen the relationship between parent and child, and work with the parent to regain custody (Social Services Law § 384-a [2] [c] [iv]; Matter of Sheila G., 61 NY2d, at 385, supra).
Because of the statutory emphasis on the biological family as best serving a child’s long-range needs, the legal rights of foster parents are necessarily limited (see, Smith v Organization of Foster Families, 431 US 816, 846). Legal custody of a child in foster care remains with the agency that places the child, not with the foster parents (Social Services Law § 383 [2]). Foster parents enter into this arrangement with the express understanding that the placement is temporary, and that the agency retains the right to remove the child upon notice at any time (People ex rel. Ninesling v Nassau County Dept, of Social Servs., 46 NY2d 382, 387, rearg denied 46 NY2d 836). As made clear in Matter of Spence-Chapin Adoption Serv. v Polk (29 NY2d 196), "foster care custodians must *310 deliver on demand not 16 out of 17 times, but every time, or the usefulness of foster care assignments is destroyed. To the ordinary fears in placing a child in foster care should not be added the concern that the better the foster care custodians the greater the risk that they will assert, out of love and affection grown too deep, an inchoate right to adopt.” (Id., at 205.) Foster parents, moreover, have an affirmative obligation —similar to the obligation of the State — to attempt to solidify the relationship between biological parent and child. While foster parents may be heard on custody issues (see, Social Services Law § 383 [3]), they have no standing to seek permanent custody absent termination of parental rights (see, Matter of Rivers v Womack, 178 AD2d 532).
Fundamental also to the statutory scheme is the preference for providing children with stable, permanent homes as early as possible (see, Matter of Peter L., 59 NY2d 513, 519). "[W]hen it is clear that the natural parent cannot or will not provide a normal family home for the child and when continued foster care is not an appropriate plan for the child, then a permanent alternative home should be sought” (Social Services Law § 384-b [1] [a] [iv]). Extended foster care is not in the child’s best interest, because it deprives a child of a permanent, nurturing family relationship (see, Matter of Gregory B., 74 NY2d 77, 90, rearg denied sub nom. Matter of Willie John B., 74 NY2d 880; Matter of Joyce T., 65 NY2d 39, 47-48). Where it appears that the child may never be reunited with the biological parents, the responsible agency should institute a proceeding to terminate parental rights and free the child for adoption (Social Services Law § 384-b [1] [b]; [3] [b]; § 392 [6] [c]).
Parental rights may be terminated only upon clear and convincing proof of abandonment, inability to care for the child due to mental illness or retardation, permanent neglect, or severe or repeated child abuse (Social Services Law § 384-b [3] [g]; [4]).[2] Of the permissible dispositions in a termination *311 proceeding based on permanent neglect (see, Family Ct Act §631), the Legislature — consistent with its emphasis on the importance of biological ties, yet mindful of the child’s need for early stability and permanence — has provided for a suspended judgment, which is a brief grace period designed to prepare the parent to be reunited with the child (Family Ct Act §633). Parents found to have permanently neglected a child may be given a second chance, where the court determines it is in the child’s best interests (Family Ct Act § 631), but that opportunity is strictly limited in time. Parents may have up to one year (and a second year only where there are "exceptional circumstances”) during which they must comply with terms and conditions meant to ameliorate the difficulty (see, 22 NYCRR 205.50 [spelling out terms and conditions]). Noncompliance may lead to revocation of the judgment and termination of parental rights. Compliance may lead to dismissal of the termination petition with the child remaining subject to the jurisdiction of the Family Court until a determination is made as to the child’s disposition pursuant to Social Services Law § 392 (6) (see, Matter of Sheila G., 61 NY2d, at 390, supra).
Where parental rights have not been terminated, Social Services Law § 392 promotes the objectives of stability and permanency by requiring periodic review of foster care placements. The agency having custody must first petition for review after a child has been in continuous foster care for 18 months (Social Services Law § 392 [2]), and if no change is made, every 24 months thereafter (Social Services Law § 392 [9]). While foster parents who have been caring for such child for the prior 12 months are entitled to notice (Social Services Law § 392 [4]), and may also petition for review on their own initiative (Social Services Law § 392 [2]), a petition under section 392 (captioned "Foster care status; periodic family court review”) is not an avenue to permanent custody for foster parents where the child has not been freed for adoption.
Upon such review, the court must consider the appropriateness of the agency’s plan for the child, what services have been offered to strengthen and reunite the family, efforts to plan for other modes of care, and other further efforts to promote the child’s welfare (see, Social Services Law § 392 [5-a]), and in accordance with the best interest of the child, make one of the following dispositions: (1) continue the child in foster care (which may include continuation with the current foster parents) (Social Services Law §392 [6] [a]); (2) direct *312 that the child "be returned to the parent, guardian or relative, or [direct] that the child be placed in the custody of a relative or other suitable person or persons” (Social Services Law § 392 [6] [b]); or (3) require the agency (or foster parents upon the agency’s default) to institute a parental rights termination proceeding (Social Services Law § 392 [6] [c]).
The key element in the court’s disposition is the best interest of the child (Social Services Law § 392 [6]) — the statutory term that is at the core of this appeal, and to which we now turn.
"Best Interest” in the Foster Care Scheme
"Best interests) of the child” is a term that pervades the law relating to children — appearing innumerable times in the pertinent statutes, judicial decisions and literature — yet eludes ready definition. Two interpretations are advanced, each vigorously advocated.
Appellant would read the best interest standard of Social Services Law § 392 (6) narrowly, urging that Family Court should inquire only into whether the biological parent is fit, and whether the child will suffer grievous harm by being returned to the parent. Appellant urges affirmance of the Family Court orders, which (1) defined the contest as one between foster care agency and biological parent, rather than foster parent and biological parent; (2) focused first on "the ability of the father to care for the subject child,” and then on whether "the child’s emotional health will be so seriously impaired as to require continuance in foster care;” and (3) concluded that appellant was fit, and that Michael would not suffer irreparable emotional harm if returned to him. Wider inquiry, appellant insists, creates an "unwinnable beauty contest” the biological parent will inevitably lose where foster placement has continued for any substantial time.
Respondents take a broader view, urging that because of extraordinary circumstances largely attributable to appellant, the Appellate Division correctly compared him with the foster parents in determining Michael’s custody and concluded that the child’s best interest was served by the placement that better provided for his physical, emotional and intellectual needs. Respondents rely on Matter of Bennett v Jeffreys (40 NY2d 543, supra), this Court’s landmark decision recognizing that a child’s prolonged separation from a biological parent may be considered, among other factors, to be extraordinary *313 circumstances permitting the court to inquire into which family situation would be in the child’s best interests (id., at 548, 551).
In that Matter of Bennett v Jeffreys concerned an unsupervised private placement, where there was no directly applicable legislation, that case is immediately distinguishable from the matter before us, which is controlled by a detailed statutory scheme (Matter of Bennett v Jeffreys, 40 NY2d, at 545, supra). Our analysis must begin at a different point — not whether there are extraordinary circumstances, but what the Legislature intended by the words "best interest of the child” in Social Services Law § 392 (6).
Necessarily, we look first to the statute itself. The question is in part answered by Social Services Law §§ 383 and 384-b, which encourage voluntary placements, with the provision that they will not result in the termination of parental rights so long as the parent is fit. To use the period during which a child lives with a foster family, and emotional ties that naturally eventuate, as a ground for comparing the biological parent with the foster parent undermines the very objective of voluntary foster care as a resource for parents in temporary crisis, who are then at risk of losing their children once a bond arises with the foster families.
Other portions of the statute support this conclusion. Significantly, after an adjudication of permanent neglect, the statute directs the disposition to be made "solely on the basis of the best interests of the child, and there shall be no presumption that such interests will be promoted by any particular disposition” (Family Ct Act § 631 [emphasis added]; Matter of Star Leslie W., 63 NY2d 136, 147-148). As against this provision, Social Services Law § 392 (6) states only that a disposition should be made "in accordance with the best interest of the child.”
Absent an explicit legislative directive — such as that found in Family Court Act § 631 — we are not free to overlook the legislative policies that underlie temporary foster care, including the preeminence of the biological family. Indeed, the legislative history of Social Services Law § 392 (5-a), which specifies factors that must be considered in determining the child’s best interests, states "this bill clearly advises the Family Court of certain considerations before making an order of disposition. These factors establish a clear policy of exploring all available means of reuniting the child with his family *314 before the Court decides to continue his foster care or to direct a permanent adoptive placement.” (Mem Accompanying Comments on Bill, NY State Bd of Social Welfare, A 12801-B, July 9,1976, Governor’s Bill Jacket, L 1976, ch 667.)
We therefore cannot endorse a pure "best interests” hearing, where biological parent and foster parents stand on equal footing and the child’s interest is the sole consideration (see, Matter of Spence-Chapin Adoption Serv. v Polk, 29 NY2d, at 204, supra; People ex rel. Kropp v Shepsky, 305 NY 465, 469). In cases controlled by Social Services Law § 392 (6), analysis of the child’s "best interest” must begin not by measuring biological parent against foster parent but by weighing past and continued foster care against discharge to the biological parent, or other relative or suitable person within Social Services Law § 392 (6) (b) (see, Matter of Sheila G., 61 NY2d, at 389-390, supra; see also, Mem Accompanying Comments on Bills, NY State Dept of Social Servs, A Int 12801-B, July 14,1976, Governor’s Bill Jacket, L 1976, ch 667).
While the facts of Matter of Bennett v Jeffreys fell outside the statute, and the Court was unrestrained by legislative prescription in defining the scope of the "best interests” inquiry, principles underlying that decision are also relevant here. It is plainly the case, for example, that a "child may be so long in the custody of the nonparent that, even though there has been no abandonment or persisting neglect by the parent, the psychological trauma of removal is grave enough to threaten destruction of the child” (id., at 550), and we cannot discount evidence that a child may have bonded with someone other than the biological parent. In such a case, continued foster care may be appropriate although the parent has not been found unfit.
Under Social Services Law § 392, where a child has not been freed for adoption, the court must determine whether it is nonetheless appropriate to continue foster care temporarily, or whether the child should be permanently discharged to the biological parent (or a relative or "other suitable person”). In determining the best interest of a child in that situation, the fitness of the biological parent must be a primary factor. The court is also statutorily mandated to consider the agency’s plan for the child, what services have been offered to strengthen and reunite the family, what reasonable efforts have been made to make it possible for the child to return to the natural home, and if return home is not likely, what *315 efforts have been or should be made to evaluate other options (Social Services Law §392 [5-a]). Finally, the court should consider the more intangible elements relating to the emotional well-being of the child, among them the impact on the child of immediate discharge versus an additional period of foster care.
While it is doubtful whether it could be found to be in the child’s best interest to deny the parent’s persistent demands for custody simply because it took so long to obtain it legally (Matter of Sanjivini K., 47 NY2d, at 382, supra), neither is a lapse of time necessarily without significance in determining custody. The child’s emotional well-being must be part of the equation, parental rights notwithstanding (Matter of Sheila G., 61 NY2d, at 390, supra). However, while emotional well-being may encompass bonding to someone other than the biological parent, it includes as well a recognition that, absent termination of parental rights, the nonparent cannot adopt the child, and a child in continued custody with a nonparent remains in legal — and often emotional — limbo (see, Matter of Bennett v Jeffreys, 40 NY2d, at 551, supra)[3]
The Appellate Division, applying an erroneous "best interest” test, seemingly avoided that result when it awarded legal custody to the foster parents. We next turn to why that disposition was improper.
*316 Award of Legal Custody to Foster Parents
The Appellate Division awarded legal custody of Michael to the foster parents pursuant to Social Services Law § 392 (6) (b), noting that the statute "permits a court to enter an order of disposition directing, inter alla, that a child, whose custody and care have temporarily been transferred to an authorized agency, be placed in the custody of a suitable person or persons.” (180 AD2d, at 796.) The Court correctly looked to section 392 as the predicate for determining custody, but erroneously relied on paragraph (b) of subdivision (6) in awarding custody to the foster parents.
As set forth above, there are three possible dispositions after foster care review with respect to a child not freed for adoption: continued foster care; release to a parent, guardian, relative or other suitable person; and institution of parental termination proceedings (Social Services Law § 392 [6] [a]-[c]).
As the first dispositional option, paragraph (a) contemplates the continuation of foster care, with the child remaining in the custody of the authorized agency, and the arrangement remaining subject to periodic review. As a result of 1989 amendments, disposition under paragraph (a) can include an order that the child be placed with (or remain with) a particular foster family until the next review (L 1989, ch 744). Under the statutory scheme, however, foster care is temporary, contractual and supervised.
Paragraph (b), by contrast, contemplates removal of the child from the foster care system by return to "the parent, guardian or relative, or direction] that the child be placed in the custody of a relative or other suitable person or persons.” The 1989 statutory revision added as a permissible disposition the placement of children with relatives or other suitable persons. The purpose of this amendment was to promote family stability by allowing placement with relatives, extended family members or persons like them, as an alternative to foster care (see, Sponsor’s Mem in Support of Amended Bill, L 1989, ch 744, and 10 Day Bill Budget Report, A 7216-A, Governor’s Bill Jacket; see also, Matter of Peter L., 59 NY2d, at 519, supra).
Plainly, the scheme does not envision also including the foster parents — who were the subject of the amendment to paragraph (a) — as "other suitable persons.” Indeed, reading paragraph (b) as the Appellate Division did, to permit removal of the child from foster care and an award of legal custody to *317 the foster parents, exacerbates the legal limbo status. The child is left without a placement looking to the establishment of a permanent parental relationship through adoption, or the prospect of subsequent review of foster care status with the possibility of adoption placement at that time (see, Social Services Law § 384-b [4]; Matter of Peter L., 59 NY2d, at 519, supra), yet has no realistic chance of return to the biological parent.
The terms of paragraph (c), providing for an order that the agency institute a parental termination proceeding, further buttress the conclusion that foster parents are not included in paragraph (b). Pursuant to paragraph (c), if the court finds reasonable cause to believe there are grounds for termination of parental rights, it may order the responsible agency to institute such proceedings. If the agency fails to do so within 90 days, the foster parents themselves may bring the proceeding, unless the court believes their subsequent petition to adopt would not be approved. Thus, in the statutory scheme the Legislature has provided a means for foster parents to secure a temporary arrangement under paragraph (a) and a permanent arrangement under paragraph (c) — both of which specifically mention foster parents. They are not also implicitly included in paragraph (b), which addresses different interests.
We therefore conclude that the Appellate Division erred in interpreting Social Services Law § 392 (6) to permit the award of legal custody to respondent foster parents.
Need for Further Inquiry
We have no occasion to apply the proper legal test to the facts at hand, as the parties urge. New circumstances require remittal to Family Court for an expedited hearing and determination of whether appellant is a fit parent and entitled to custody of Michael.
The Court has been informed that, during the pendency of the appeal, appellant was charged with — and admitted — neglect of the children in his custody (not Michael), and that those children have been removed from his home and are again in the custody of the Commissioner of the Social Services. The neglect petitions allege that appellant abused alcohol and controlled substances including cocaine, and physically abused the children. Orders of fact finding have been entered by Family Court, Queens County, recognizing appel *318 lant’s admission in open court to "substance abuse, alcohol and cocaine abuse.” Moreover, an Order of Protection was entered prohibiting appellant from visiting the children while under the influence of drugs or alcohol.
Appellant’s request that we ignore these new developments and simply grant him custody, because matters outside the record cannot be considered by an appellate court, would exalt the procedural rule — important though it is — to a point of absurdity, and "reflect no credit on the judicial process.” (Cohen and Karger, Powers of the New York Court of Appeals § 168, at 640.) Indeed, changed circumstances may have particular significance in child custody matters (see, e.g., Braiman v Braiman, 44 NY2d 584, 587, 590; Matter of Angela D., 175 AD2d 244, 245; Matter of Kelly Ann M., 40 AD2d 546). This Court would therefore take notice of the new facts and allegations to the extent they indicate that the record before us is no longer sufficient for determining appellant’s fitness and right to custody of Michael, and remit the matter to Family Court for a new hearing and determination of those issues. The Appellate Division concluded that the hearing should take place before a different Judge of that court (180 AD2d, at 796), and we see no basis to disturb that determination. Pending the hearing, Michael should physically remain with his current foster parents, but legal custody should be returned to the foster care agency.
Accordingly, the order of the Appellate Division should be reversed, without costs, and the matter remitted to Family Court, Kings County, for further proceedings in accordance with this opinion.

. What is before us is an appeal from foster care review under Social Services Law § 392. While there should have been an order disposing of the suspended judgment upon its expiration (see, 22 NYCRR 205.50 [d] [4]), in *308 this case appellant’s "substantial compliance” with the conditions of the suspended judgment necessarily resolved the permanent neglect issue, since Family Court concluded the hearing by directing release of children to appellant after three negative drug tests.

. Several model statutes would authorize termination of parental rights based on a child’s absence from the biological home for a substantial period, with the period depending on the child’s age. Such provisions were based on the notion, in circulation prior to and during the formulation of our current parental termination statute, that once a child under the age of three has been in the continuous care of the same adult for a year, it is unreasonable to presume that the child’s ties with biological parents are more significant than ties with long-term caretakers (see, Taub, Assessing the Impact of Goldstein, Freud and Solnit’s Proposals: An Introductory Overview, 12 NYU Rev L & Soc Change 485, 490). Our Legislature did not recognize prolonged separation as an additional ground for termination of parental rights.

. Although the concurrence underscores the extraordinary nature of this case, widely publicized failures of the foster care system indicate that this situation is, regrettably, all too common. To the extent the courts have a role, heartbreak can perhaps be avoided and the statutory goals of early permanence and stability advanced by clear standards and by promptness in addressing child custody matters; no custody determination should be permitted to languish for years. The clear (by no means "constricting”) standard set forth by the Court, incorporating all of the relevant considerations, helps to assure that these unfortunate cases will not be caught in an endless loop between trial and appellate courts such as we have here.
The concurrence agrees that this case must be reversed on the section 392 (6) (b) ground because "a contrary interpretation of that key provision, as used by the Appellate Division, would have internally contradictory implications in the field of temporary foster child placement.” (Concurring opn, at 318.) The same is true of the "best interest” test in that same section, which must be read in the context of our statutory scheme requiring parents and the State to work together toward the preferred goal (so long as it remains realistic) of keeping biological families together. Given that foster parents cannot obtain permanent custody under Social Services Law § 392 (6) absent termination of parental rights, the concurrence’s call for even greater "flexibility,” comparing foster parent to biological parent (see, Matter of Bennett v Jeffreys, supra), obviously could not further the objectives of finality and certainty in custody determinations.