Matter of Wanda P. v Monroe County Dept. of Human Servs. (2006 NY Slip Op 50102(U))

[*1]

Matter of Wanda P. v Monroe County Dept. of Human Servs.

2006 NY Slip Op 50102(U) [10 Misc 3d 1076(A)]

Decided on January 24, 2006

Family Court, Monroe County

Ruhlmann, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on January 24, 2006

Family Court, Monroe County
In the Matter of a Custody/Visitation Proceeding WANDA P., PETITIONER,
against
Monroe County Department of Human Services, Lashay J., Nathaniel O., Sr. , RESPONDENTS.
V-09637-05

Wanda P., Petitioner, Pro Se
Peter A. Essley, Esq. for Respondent Monroe County Department of Human Services
Mary E. Feindt, Esq. for Respondent Nathaniel O., Sr.
Stephen R. Weisbeck, Esq., Law Guardian
Sheila C., Interested Party, Pro Se

Dandrea L. Ruhlmann, J.
This is a custody dispute between a child's great-aunt who resides out of state and the child's father who is incarcerated in New York State and wishes for his son to remain in Rochester under the care of a relative resource of his choice. The Court finds that extraordinary circumstances exist and it is in the child's best interests that custody be granted to the child's great-aunt.
Wanda P. (Petitioner) is the aunt of Nathaniel O., Jr.'s (Nathaniel) biological mother, Respondent LaShay J. (Mother). Petitioner served as a relative resource for Nathaniel under a related neglect action (NN-10569-03) brought against Mother. Nathaniel lived with Petitioner in North Carolina from September 23, 2003 until March 2005. In March Mother consented to a neglect finding with the permanency goal of return to parent. To facilitate this permanency goal, the parties agreed that Nathaniel should return to Rochester to allow for increased visitation with his Mother. Nathaniel thus relocated to the Rochester home of Sheila C., remaining under the custody of Respondent Monroe County Department of Human Services (Department). Since [*2]that time, Mother has neither visited regularly with Nathaniel nor followed through with the dispositional plan.
On July 21, 2005 Petitioner filed for custody against Respondents, the Department, Mother and Nathaniel's biological father Nathaniel O., Sr. (Father). At the fact finding hearing on December 9, 2005, Mother defaulted in appearance, the Department supported the petition[FN1] but Father opposed the petition. Father is incarcerated at a correctional facility located in New York State and, although he admits that Petitioner would provide a good home for Nathaniel, he contends that allowing Nathaniel to live in North Carolina would deprive him of contact with his son. He contends that Nathaniel should remain in the custody of the Department in the residence of Sheila C., his Godmother and the mother of his best friend.
I.Extraordinary Circumstances 
As between a parent and a non-parent, a parent has the superior right to custody that cannot be denied unless the nonparent establishes that the parent has relinquished that right due to surrender, abandonment, persisting neglect, unfitness, or other like extraordinary circumstances (see Matter of Male Infant L., 61 NY2d 420 [1984]; Matter of Bennett v Jeffreys, 40 NY2d 543 [1976]).
Nathaniel has not resided with his Mother since he was four months old when Mother was accused of neglect. At that time Mother asked Respondent to care for Nathaniel. In April 2005 Mother consented to a neglect finding against her. Sheila C. testified that at first Mother consistently followed the dispositional plan and visited with Nathaniel but as time progressed Mother got in trouble and stopped visiting. Mother further defaulted in appearance at this custody hearing and her residence is unknown. Prolonged separation between a mother and child, a history of unfitness as a mother and neglect of the child and a current volatile nature of a mother's life constitute extraordinary circumstances (Matter of Eleanore B.R. v Shandy S., 12 AD3d 1101, 1102 [4th Dept 2004], lv denied 4 NY3d 705 [2005]).
Nathaniel resided with his Father for only less than three months between June 3, 2003 and August 23, 2003. Father was convicted of possession of drug paraphernalia and is currently incarcerated (see Parliament v Harris, 266 AD2d 217 [2d Dept 1999] [a parent's incarceration is a factor constituting extraordinary circumstances]). Father's earliest release date is November 25, 2010 when Nathaniel, now just a toddler, will be seven years old; Father could be incarcerated until as late as 2018 when Nathaniel will be 15 years old (see Matter of Isaiah O. v Andrea P., 287 AD2d 816 [3d Dept 2001] [a child's prolonged separation from the biological parent is a factor constituting extraordinary circumstances]). Father testified that even when he was not incarcerated he saw Nathaniel only when he was not "ripping and running." No evidence was proffered to suggest that even upon Father's release date from prison, Father would be in any position to parent the child (see Matter of Gary G. v Roslyn P., 248 AD2d 980, 981 [4th Dept 1998] [a parent's failure to develop a financial plan for a child and an arrest for a drug sale are factors constituting extraordinary circumstances]). Since both parents are unable to care for Nathaniel, Petitioner thus proved that extraordinary circumstances exist necessitating that this Court reach the issue of Nathaniel's best interests.
[*3]
II.Best Interests
Several factors to consider when ascertaining a child's best interests include, inter alia, the ability to provide for the child's emotional and intellectual development, the relative fitness of those seeking custody, the quality of the home environments, and the financial status and ability to provide for the child (see generally Fox v Fox, 177 AD2d 209, 210 [4th Dept 1992]). This is a unique situation because Petitioner is the only party seeking custody (see Parliament v Harris, 266 AD2d 217 [2d Dept 1999]); while Sheila C. wishes to keep Nathaniel in her care, she did not petition for custody. The Court thus must weigh whether to keep Nathaniel in the custody of the Department residing with Sheila C. to foster a better relationship between Nathaniel and his Father or to offer Nathaniel a permanent home with Petitioner. Since the Court's upmost concern is Nathaniel's best interests and not the interests of Father, the scale falls heavily in favor of granting Petitioner custody.
Nathaniel's emotional development is foremost to the Court's analysis of his best interests. Nathaniel is clearly loved and cared for by both Petitioner and Sheila C. but the Court does not underplay the importance of keeping Nathaniel's Father a primary figure in this young boy's life. Nathaniel is very attached to his Father. Father testified that having Nathaniel in the home of Sheila C. provides him with stress relief because he always knows about Nathaniel. He testified that Sheila C. provides him with photographs of Nathaniel and brings Nathaniel to visit him. The Court applauds Sheila C.'s efforts since last March to keep Father a central figure in Nathaniel's life. Sheila C. brought Nathaniel to visit Father whenever Father was held in a local facility for Court appearances. She brought Nathaniel to visit Father only one time at the correctional facility where Father resides because of the great travel distance but she has since learned of a free bus which may allow for more frequent visits. Father also testified that he may be eligible to transfer to a prison closer to Rochester in June 2006 potentially allowing for more frequent visits.
On the other hand, Father testified that if Petitioner is granted custody he does not believe she would bring Nathaniel to visit him because of the distance to North Carolina. Petitioner admitted that during the time that she had Nathaniel in her care she was not able to bring Nathaniel to visit Father and did not send any photographs directly to Father. She testified however that she did write to Father and provided Mother with photographs that she believed would be shared with Father. Petitioner testified that she formerly was not in a position to allow Mother to visit her in North Carolina because she had only a two-bedroom apartment. Petitioner testified that she now is able to foster a relationship between Nathaniel and Father because she has moved to a three-bedroom apartment and has a telephone. She testified that she generally visits New York three times a year in spring, summer and fall and would bring Nathaniel along to visit Father, would send him letters and photographs and accept collect calls from him. Petitioner appeared forthright in her testimony and the Court finds her credible.
While the Court believes that Nathaniel's emotional development will be enhanced if he maintains a relationship with his Father, the fact remains that Father is in prison. While all may have the best intentions of fostering a relationship, there remains only so much that can be done especially considering that Father resides at a correctional facility which even Sheila C. testified is difficult to visit on a regular basis. While Sheila C. might be better able to foster a relationship between Nathaniel and Father preferable to Father, again the Court must consider Nathaniel's best interests and not the best interests of Father (see Matter of John KK v Gerri KK, 302 AD2d 811 [3d Dept 2003], lv denied 100 NY2d 504 [2003] [Court denied a biological father's claim that he was improperly denied custody of his son as the Court adjudged him as "unfit" in the absence of an [*4]Article 10 claim against him]). Petitioner's offer to allow visitation to Father five times a year along with consistent correspondence will provide Nathaniel with a relationship best under the circumstances.
Nathaniel has bonded with both Petitioner and Sheila C.. Sheila C., who has been caring for Nathaniel since last March, testified that she thinks of Nathaniel as her grandson. She testified that while Nathaniel was shy when he first came to live with them, he has since opened up and has numerous friends on the street and playground. Yet Petitioner and her husband testified that they acted as caretakers for Nathaniel for 17 months when he was only four months old and they loved watching him grow in their care; indeed, they watched as Nathaniel took his first steps in their home. Petitioner testified that since Nathaniel left her home and commenced living with Sheila C., Nathaniel remains attached to her, runs to her and is upset when she leaves. The Court will fashion an order to ensure that Petitioner implements her promise to continue to foster the important relationship between Nathaniel and Father.
Above all, Nathaniel's best interest will be served by permanency. Nathaniel has been in the care of the Department for most of his life and deserves the permanent home that Petitioner, his great-aunt, offers. Not only is Petitioner Mother's aunt, but she also acted as caretaker for Mother when Mother was between the ages of 12 and 16. Nathaniel has other family members who live in North Carolina as well including distant cousins. Extended family members serve as an important means in getting children out of the foster care system (Matter of Michael B., 80 NY2d 299, 316 [1992]; see In Re G.B., 7 Misc 3d 1022(A), 801 NYS2d 233 [Fam Ct, Monroe County 2005]). While Sheila C. testified that she has known Father since he moved to Rochester over 11 years ago and that Father is "like her child," if Nathaniel remains in her residence he nonetheless remains in the custody of the Department. To the contrary, if custody is granted to Petitioner, Nathaniel will be freed from the foster care system and will be with his biological family.
On the issues of the relative fitness of those seeking custody, the quality of the home environments, and the financial status and ability to provide for the child, the Court notes that Father disputed neither the parental fitness of Petitioner nor the suitability of her home (Matter of Isaiah O. v Andrea P., supra , 287 AD2d 816, 818). Both Petitioner and Sheila C. have assured that Nathaniel has had good medical care. Nathaniel has a doctor in North Carolina whom he visited two times while he lived with Petitioner; he did not have any health issues while residing with Petitioner. Since living with Sheila C., Nathaniel has also been seen regularly by a doctor. Although he was treated recently for head lice and anemia, he remains a healthy young boy. While both Petitioner and Sheila C. have shown that they are responsible in seeking medical care for Nathaniel, importantly there was no evidence that Father could likewise provide such care.
Petitioner served as the first relative resource and Nathaniel resided with her in Rochester until she received a job transfer and her family moved to Charlotte, North Carolina when Nathaniel was approximately ten months old. Petitioner has been married to her husband, David P. for 11 years. David P. has a 16-year-old son who also resides with the family. The family lives in a three-bedroom apartment in which Nathaniel would have his own bedroom. Sheila C.'s home is certainly suitable as well; it is a single-family home with a living room, dining room, kitchen, two bedrooms, one bathroom and a full basement. Nathaniel sleeps in a bedroom with Sheila C.'s [*5]16-year-old son Richard.[FN2] Nonetheless while there is no dispute that Nathaniel is in stable home environments with either Petitioner in North Carolina or with Sheila C. in Rochester, Sheila C.'s home is Nathaniel's home only while Nathaniel remains under the care and custody of the Department. There was no testimony regarding where Father plans to reside after he is released from prison and whether Father would be able to ascertain appropriate housing at that time.
Petitioner also proved that she can financially provide for Nathaniel. She works full time from 7:30 a.m. until 4:30 p.m. and earns approximately $60,000 per year. Nathaniel would be medically insured through her employment. David P. works from 3:00 - 11:00 p.m. Petitioner plans to enroll Nathaniel in daycare between the hours of 12:00 - 5:00 p.m. Sheila C. is a self-employed licensed daycare provider providing in-home daycare services for three children and earns approximately $20,000 in annual income. She receives public assistance to care for Nathaniel. Again there was no testimony concerning how or whether Father could financially support Nathaniel once released from prison. Petitioner is in the best position to provide financially for Nathaniel.
 In sum, Petitioner met her burden in proving that extraordinary circumstances exist and that it is Nathaniel's best interests that custody be transferred to her. The Law Guardian likewise advocated that, in the best interests of Nathaniel, Petitioner should be granted custody of Nathaniel.
NOW, therefore, it is hereby
ORDERED that sole custody of Nathaniel is granted to Petitioner; and it is further
ORDERED that arrangements shall be made and Nathaniel shall be moved to Petitioner's residence in North Carolina within the next thirty (30) days; and it is further
ORDERED that Petitioner shall bring Nathaniel to Rochester at a minimum of five times per year to visit with Respondents Nathaniel O., Sr. and Sheila C. at times mutually agreed upon by the parties; and it is further
ORDERED that there shall be additional visitation as agreed upon by the parties; and it is further
ORDERED that Petitioner shall provide Respondent Nathaniel O., Sr. with photographs of Nathaniel and monthly updates regarding Nathaniel's development; and it is further
ORDERED that Petitioner shall allow and facilitate reasonable telephone contact between Nathaniel and Respondent Nathaniel O., Sr.
 Dated this 24th day of January, 2006, at Rochester, New York.
 ____________________________________
 HON. DANDREA L. RUHLMANN
 FAMILY COURT JUDGE
Pursuant to §1113 of the Family Court Act, an appeal must be taken within thirty days of receipt of the order by appellant in Court, thirty-five days from [*6]the mailing of the order to the appellant by the Clerk of the Court, or thirty days after service by a party or law guardian upon the appellant, whichever is earliest.

Footnotes

Footnote 1: The Department also agreed that if Petitioner was granted custody of Nathaniel, it would withdraw the pending neglect case against Mother.

Footnote 2: The Court is somewhat concerned that Nathaniel and Richard share bunk beds in Sheila C.'s home with toddler Nathaniel sleeping alone on the top bunk.