■ In the Matter of GRACIE YY. and Another, Children Alleged to be Permanently Neglected. CORTLAND COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; AMY YY., Appellant. [825 NYS2d 303]—

Carpinello, J. Appeal from an order of the Family Court of Cortland County (Campbell, J.), entered January 26, 2006, which granted petitioner's application, in a proceeding pursuant to Social Services Law § 384-b, to revoke a suspended judgment, and terminated respondent's parental rights.

Respondent is the mother of Rashonna YY. (born in 2001) and Gracie YY. (born in 2002).[1] In July 2004, a suspended judgment containing numerous conditions was entered against respondent after she consented to an adjudication of permanent neglect. Prior to its expiration, however, a violation petition was filed seeking termination of her parental rights. Following a hearing, Family Court found that respondent violated a number of the conditions of the suspended judgment and revoked it. Furthermore, following a dispositional hearing, the court terminated her parental rights and transferred guardianship and custody of the children to petitioner pending adoption. Respondent now appeals.

We begin by reiterating the well-settled principle that a suspended judgment provides a parent found guilty of permanent neglect with a brief grace period within which to complete the goals necessary to be reunited with his or her children (see Matter of Frederick MM., 23 AD3d 951, 952 [2005]; Matter of James E., 17 AD3d 871, 873 [2005]; see also Matter of Michael B., 80 NY2d 299, 311 [1992]). Where there is noncompliance with the terms of the suspended judgment, Family Court may revoke it and terminate parental rights provided, however, that such noncompliance is established by a preponderance of the evidence (see Matter of James E., supra at 874). Upon our review of the record, we are satisfied that a sound and substantial basis exists to support Family Court's determination that respondent violated numerous terms of the suspended judgment (see Matter of Shawna DD., 289 AD2d 892, 894 [2001]; Matter of Kaleb U., 280 AD2d 710, 712 [2001]).

Pursuant to the suspended judgment, respondent was

---

1. While respondent has another child, Hannah YY. (born in 2004), this child is not the subject of the instant proceeding.

required to, among other conditions, maintain steady employment, cooperate with caseworkers to ensure access to all eligible public benefits, obtain safe and adequate housing, keep her home in a reasonably clean condition, provide adequate supervision for her children, have all caregivers approved by her caseworker, refrain from violent or harassing conduct toward others, lead a law-abiding life and obtain physician approval before bringing any pet into her household. Petitioner established by a preponderance of the evidence that respondent violated each of these conditions.

First, respondent did not maintain any employment during the period of the suspended judgment. While there was testimony that she was not "employable" due to certain mental and physical conditions, she was nevertheless required to take steps to become so. Petitioner's witnesses established, however, that respondent had a pattern of noncompliance in attending recommended programs designed to assist her in becoming employable (see e.g. Matter of James E., supra at 874; Matter of Kaleb U., supra). She also missed appointments concerning eligibility for disability benefits. In addition, she demonstrated little progress on alleged efforts to obtain her high school equivalency degree and failed to keep tutoring appointments (see Matter of Lord-El T., 260 AD2d 955, 956 [1999]). She also demonstrated poor money management skills despite repeated efforts to counsel her in this area. For example, despite having no money to buy diapers, pay utilities or pay rent during certain time periods, respondent nevertheless purchased a dog for $300 (see Matter of Jennifer VV., 241 AD2d 622, 624 [1997]). In the words of her caseworker, she simply failed to achieve stability in her life.

With respect to the requirement that respondent maintain a reasonably clean household, there was considerable testimony about an incident wherein the police were called to her home in response to an emergency call.[2] According to two witnesses—a responding police officer and an on-call caseworker who was sent to the home—the house was in a deplorable and filthy condition (see id. at 623). Garbage, clothing, uneaten food, electrical cords and other unsanitary items were strewn about. Indeed, according to the police officer, broken glass was underneath the coffee table in the living room.

---

**2.** The 911 call was generated by respondent herself after one of her children fell down the basement stairs. These stairs were decaying and a large caged iguana sat at the top of the stairs which the child had to pass to gain access to the basement. There was no baby gate preventing the child's access to the stairway.

Evidence was also presented that respondent failed to obtain prior approval for pets in the house, including the iguana and dog. She also failed to obtain prior approval for all caregivers. Moreover, it was undisputed that she was arrested for harassment in the second degree after an altercation with another woman and ultimately pleaded guilty to that charge. The evidence further demonstrated that she failed to maintain adequate housing (*see Matter of Frederick MM.*, 23 AD3d 951, 953 [2005], *supra*). At the time of the hearing, respondent, who had already moved twice in the preceding year, was living with her mother and stepfather in their two-bedroom apartment.[3] While these family members indicated a willingness to let respondent and her children live there, such an arrangement would require respondent's three children to share a bedroom with her young half sister.[4] Deferring to Family Court's credibility and factual determinations (*see id.*; *Matter of Kaleb U.*, 280 AD2d 710, 712 [2001], *supra*; *Matter of Ericka LL.*, 256 AD2d 1037, 1038 [1998]), we see no basis to disturb its conclusion that respondent violated numerous terms of the suspended judgment. The evidence also supports the court's further determination that termination of respondent's parental rights is in the children's best interests.

Mercure, J.P., Peters, Spain and Kane, JJ., concur. Ordered that the order is affirmed, without costs.

---

3. Respondent slept on a cot in their living room.

4. In any event, it was revealed during the dispositional phase that respondent's mother and stepfather were making plans to move out of state. Notably, respondent had no plans for housing upon this event.