Matter of Max HH. (Kara FF.) (2019 NY Slip Op 02397)





Matter of Max HH. (Kara FF.)


2019 NY Slip Op 02397


Decided on March 28, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 28, 2019

526158

[*1]In the Matter of MAX HH., Alleged to be an Abandoned Child. CHENANGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KARA FF., Appellant. (Proceeding No. 1.)
In the Matter of ARIA HH., Alleged to be a Permanently Neglected Child. CHENANGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; KARA FF., Appellant. (Proceeding No. 2.)

Calendar Date: February 11, 2019

Before: Garry, P.J., Lynch, Clark, Devine and Pritzker, JJ.


Christopher Hammond, Cooperstown, for appellant.
Sarah C. Fitzpatrick, Chenango County Department of Social Services, Norwich, for respondent.
Lisa A. Natoli, Norwich, attorney for the child.



MEMORANDUM AND ORDER
Clark, J.
Appeals (1) from an order of the Family Court of Chenango County (Revoir Jr., J.), entered December 4, 2017, which (a) granted petitioner's application, in proceeding No. 1 pursuant to Social Services Law § 384-b, to adjudicate the subject child to be abandoned, and terminated respondent's parental rights, and (b) granted petitioner's application, in proceeding No. 2 pursuant to Social Services Law § 384-b, to revoke a suspended judgment, and terminated [*2]respondent's parental rights, and (2) from an order of said court, entered December 4, 2017, which, in a proceeding pursuant to Social Services Law § 384-b, modified the permanency plan for respondent's son to be freed for adoption.
Respondent is the mother of a daughter and a son (born in 2014 and 2016, respectively). Unfortunately, respondent has an extensive history of involvement with petitioner, which includes both of the children having come into petitioner's care and custody shortly after birth as a result of respondent's ongoing substance abuse addiction. With respect to the daughter, in November 2016, respondent entered into a stipulation in which she made admissions of permanent neglect and consented to an order of fact-finding and disposition that suspended judgment for a period of 12 months. Roughly six months later, based on allegations that respondent had failed to comply with the terms and conditions of the suspended judgment, petitioner filed a violation petition seeking revocation of the suspended judgment and termination of respondent's parental rights to the daughter. As for the son, shortly after his birth, respondent consented to an adjudication of neglect that was based in part on her admissions that the son had tested positive at birth for amphetamines, opiates and benzodiazepines and, consequently, suffered severe withdrawal symptoms. Thereafter, when the son was nearly eight months old, petitioner commenced an abandonment proceeding seeking to terminate respondent's parental rights to the son.
In October 2017, Family Court conducted a combined fact-finding hearing on the violation and abandonment petitions, at which petitioner presented the testimony of a foster care caseworker and respondent testified on her own behalf. Family Court determined that respondent had both abandoned the son and violated the terms and conditions of the suspended judgment and, as a result, revoked the suspended judgment and terminated respondent's parental rights to both children. By separate order, entered the same day, Family Court approved a change in the permanency plan for the son to be free for adoption. Respondent appeals.
We first address Family Court's determination relating to the daughter. A suspended judgment provides a parent who has been found to have permanently neglected his or her child with a brief opportunity to become a fit parent with whom the child can be safely reunited (see Matter of Michael B., 80 NY2d 299, 311 [1992]; Matter of Cecilia P. [Carlenna Q.], 163 AD3d 1095, 1095 [2018]; Matter of Jerhia EE. [Benjamin EE.], 157 AD3d 1017, 1018 [2018]). "This opportunity is limited in time[,] during which the parent 'must comply with terms and conditions meant to ameliorate the difficulty' [that] led to the suspended judgment" (Matter of Alexsander N. [Lena N.], 146 AD3d 1047, 1048 [2017], lv denied 29 NY3d 903 [2017], quoting Matter of Michael B., 80 NY2d at 311). Where a parent's noncompliance with the terms and conditions of the suspended judgment is established by a preponderance of the evidence, Family Court may revoke the suspended judgment and, if in the child's best interests, terminate parental rights (see Matter of Michael B., 80 NY2d at 311; Matter of Jasnia Y. [Alease Y.], 162 AD3d 1148, 1149 [2018], lv denied 32 NY3d 901 [2018]). Such noncompliance, however, is "strong evidence" that the termination of parental rights is in the child's best interests (Matter of Clifton ZZ. [Latrice ZZ.], 75 AD3d 683, 685 [2010]; see Matter of Madelyn D. [Direll D.], 112 AD3d 1165, 1166 [2013]).
The evidence at the fact-finding hearing demonstrated that, during the six months preceding the filing of the violation petition, respondent failed to comply with most, if not all, of the terms and conditions of her suspended judgment. Most significantly, testimony from petitioner's caseworker, as well as respondent, revealed that respondent had not completed any of the treatment programs required by Family Court or recommended by petitioner to address her addiction, and respondent's testimony demonstrated that she had continued to use illegal drugs or misuse prescription medication during at least some of the time period that the suspended judgment was in effect. Additionally, at the time of the hearing, respondent had not visited with the child in roughly a year. Respondent testified that she had not wanted to exercise visitation when she "was dope sick or high." The evidence further established that, despite petitioner's efforts to remind respondent in several letters of her obligations under the suspended judgment, respondent did not maintain regular contact with petitioner, resulting in petitioner's lack of [*3]information regarding respondent's living and employment situations and any progress or attempts she may have made to comply with the court's mandates. Respondent's failure to cooperate and communicate with petitioner, as required, resulted in petitioner being unable to verify the validity of respondent's self-serving testimony that she had been sober since February 2017 and had participated in, but not completed, treatment programs that she had found herself. As the record was replete with evidence of respondent's noncompliance with the various terms and conditions imposed upon her, Family Court properly concluded that respondent had violated the suspended judgment (see Matter of Cecilia P. [Carlenna Q.], 163 AD3d at 1096; Matter of Jason H. [Lisa K.], 118 AD3d 1066, 1068 [2014]).
As to disposition, the daughter — who was three years old at the time of the fact-finding hearing — had been in petitioner's care and custody for nearly her entire life. Testimony from petitioner's caseworker established that the daughter was flourishing in the care of her foster parent, who desired to adopt her, and that she was closely bonded with her foster parent and foster siblings. In contrast, the daughter had not seen respondent in roughly a year, and there was no evidence to support the conclusion that respondent had made any meaningful progress to address the concerns that led to the daughter's removal roughly three years earlier. Under these circumstances, we find a sound and substantial basis in the record to support the determination that revocation of the suspended judgment and termination of respondent's parental rights was in the daughter's best interests (see Matter of Joseph QQ. [Karissa RR.], 161 AD3d 1252, 1252-1253 [2018], lv denied 31 NY3d 912 [2018]; Matter of Jerhia EE. [Benjamin EE.], 157 AD3d at 1019).
Turning to Family Court's determination relating to the son, a termination of parental rights based upon abandonment is warranted if the petitioning agency satisfies its burden of proving by clear and convincing evidence that, during the six months preceding the petition's filing, the parent "evince[d] an intent to forego his or her parental rights and obligations as manifested by his or her failure to visit the child and communicate with the child or agency, although able to do so and not prevented or discouraged from doing so by the agency" (Social Services Law § 384-b [5] [a]; see Matter of Mason H. [Joseph H.], 31 NY3d 1109, 1110 [2018]). "A parent's ability to visit and/or communicate with his or her child is presumed, and once a failure to do so is established, the burden is upon the parent to prove an inability to maintain contact or that he or she was prevented or discouraged from doing so by the petitioning agency" (Matter of Jackie B. [Dennis B.], 75 AD3d 692, 693 [2010] [citations omitted]; see Social Services Law § 384-b [5] [a]; Matter of Kayson R. [Christina S.], 166 AD3d 1346, 1347 [2018]).
Testimony from petitioner's caseworker and respondent, as well as prior court orders of which Family Court took judicial notice, established that the son was born addicted to drugs in late September 2016, that respondent visited with him in the hospital two days later for a total of one hour and that, between that visit and the filing of the abandonment petition in May 2017, respondent had not seen the son or sent him any cards, letters or gifts. The evidence also demonstrated that petitioner made repeated, unsuccessful efforts to facilitate visits between respondent and the son. In fact, as revealed by the testimony, petitioner and respondent made arrangements for a visit in December 2016, but respondent ultimately failed to show up for that visit and had no further contact with petitioner, despite the caseworker's attempts to reach respondent by phone and mail. Respondent testified that she could not attend visits with the son because she did not own a car or have the financial means to secure alternate transportation. However, she also testified that she had not wanted to visit with the son when she was under the influence of drugs because it was "not fair to [him]" and acknowledged that money that could have been used for transportation to visits was often instead used to fuel her drug addiction. In view of the foregoing evidence, the record fully supports Family Court's conclusion that respondent evinced an intent to forgo her parental rights and obligations to the son by failing to visit and communicate with him for a period of over seven months, although able to do so and not prevented or discouraged from doing so by petitioner (see Social Services Law § 384-b [5] [a]; Matter of Ryan I. [Laurie U.], 82 AD3d 1524, 1525-1526 [2011]; Matter of Gabriel D. [Andrea D.], 68 AD3d 1505, 1506 [2009], lv denied 14 NY3d 703 [2010]). Accordingly, there is no basis upon which to disturb Family Court's determination to terminate respondent's parental [*4]rights to the son on the ground of abandonment and to change his permanency goal to be free for adoption.
In upholding Family Court's determinations regarding each of respondent's children, we have examined respondent's evidentiary challenges and claim of ineffective assistance of counsel and found them to be lacking in merit.
Garry, P.J., Lynch, Devine and Pritzker, JJ., concur.
ORDERED that the orders are affirmed, without costs.