Matter of Aiden E. (Tiffany D.) (2026 NY Slip Op 00955)

Matter of Aiden E. (Tiffany D.)

2026 NY Slip Op 00955

Decided on February 19, 2026

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:February 19, 2026

CV-24-1734
[*1]In the Matter of Aiden E. and Others, Alleged to be Permanently Neglected Children. St. Lawrence County Department of Social Services, Respondent; Tiffany D., Appellant. (Proceeding No. 1.)
In the Matter of Aiden E. and Others, Alleged to be Permanently Neglected Children. St. Lawrence County Department of Social Services, Respondent; David E., Appellant. (Proceeding No. 2.)

Calendar Date:January 6, 2026

Before:Garry, P.J., Reynolds Fitzgerald, McShan, Powers and Mackey, JJ.

Lisa A. Burgess, Indian Lake, for Tiffany D., appellant.
Cynthia Feathers, Saratoga Springs, for David E., appellant.
Stephen D. Button, County Attorney, Canton (Keith S. Massey Jr. of counsel), for respondent.
Trinidad M. Martin, Glens Falls, attorney for the children.
Timothy J. Lawliss, Peru, attorney for the child.

Garry, P.J.
Appeal from an order of the Family Court of St. Lawrence County (Andrew Moses, J.), entered September 17, 2024, which granted petitioner's applications, in two proceedings pursuant to Social Services Law § 384-b, to adjudicate the subject children to be permanently neglected, and terminated respondents' parental rights.

Respondent Tiffany D. (hereinafter the mother) and respondent David E. (hereinafter the father) are the parents of three children (born in 2012, 2014 and 2020). In October 2020, the children were removed from the parents' custody, on consent, and placed in the custody of petitioner after the youngest child was born testing positive for suboxone and methamphetamines.[FN1] The parents subsequently made admissions of neglect as to the youngest child and derivative neglect as to the elder children, and, following a dispositional hearing, the children's placement with petitioner was continued. In or around August 2021, the children began living with the mother's cousin (hereinafter the foster mother) and her spouse. The subject permanent neglect petitions followed in January 2022, alleging that the parents' continued use of illicit drugs and failure to engage in required services amounted to a failure to plan for the children. The parents again elected to forgo fact-finding and consented to findings of permanent neglect with respect to the children. Following a dispositional hearing, Family Court terminated the parents' parental rights. The parents appeal, contending that a suspended judgment was in the best interests of the children.[FN2]
"Following an adjudication of permanent neglect, the sole concern at a dispositional hearing is the best interests of the child, and there is no presumption that any particular disposition, including the return of a child to a parent, promotes such interests" (Matter of Y. SS. [E. SS.], 243 AD3d 1131, 1133 [3d Dept 2025] [internal quotation marks, brackets and citations omitted]; see Matter of Macayla N. [Sheena N.], 240 AD3d 976, 981 [3d Dept 2025], lv denied ___ NY3d ___ [Feb. 11, 2026]). Although "the court may decide to issue a suspended judgment rather than terminating parental rights, a suspended judgment is only appropriate where a parent has made significant progress[,] such that a brief grace period would allow him or her to demonstrate the ability to be a fit parent, and such delay is consistent with the child's best interests" (Matter of Carmela D. [Shameeka G.], 232 AD3d 1126, 1131 [3d Dept 2024] [internal quotation marks, brackets and citation omitted], lvs denied 43 NY3d 903 [2025], 43 NY3d 903 [2025]; see Family Ct Act § 633; Matter of Michael B., 80 NY2d 299, 311 [1992]).
The parties stipulated that the operative period for the dispositional hearing would be June 2022 through June 2023. It is undisputed that neither parent visited the children from June 2022 through January 2023. Although it appears that the parents experienced the loss of the maternal grandmother during that time, the parents' [*2]reasons for failing to visit the children were largely homelessness, transportation issues and admitted illicit drug use.[FN3] Supervised visitation, however, was scheduled to take place at a visitation center, rendering any housing instability largely irrelevant, and the credited evidence revealed that the parents failed to avail themselves of more than one form of transportation assistance offered by petitioner. As noted, the evidence revealed ongoing drug use during the relevant period, with positive drug screens into March 2023, coupled with inconsistent engagement in related services, other than medication-assisted treatment. While the mother appears to have made occasional inquiries regarding the provision of gifts to the children during her absence, no gifts were provided, and neither parent sent letters or otherwise maintained contact with the children during the prolonged period of nonvisitation. The parents resumed supervised visitation in February 2023 and continued to exercise parenting time through June 2023. The middle child, however, refused to participate in the majority of those visits. Although petitioner's progress notes reveal that visits with the children toward the end of the relevant period were generally appropriate and positive, the credited testimony also established that the children experienced violent behavioral changes and/or developmental regressions following parental visits. Ultimately, the parents never progressed beyond fully supervised contact with the children. Both parents also testified that they were unemployed throughout the relevant period. Apparently in late June 2023, the parents did obtain more permanent housing, residing in the house of a relative.
Although we acknowledge that the foster mother expressed some hesitation when asked to commit to being an adoptive resource for the children,[FN4] that consideration is not dispositive (see generally Matter of Arianna I. [Roger I.], 100 AD3d 1281, 1283-1284 [3d Dept 2012]). According due deference to Family Court's credibility determinations and factual findings regarding the parents' repeated failure to visit the children, continued illicit drug use and minimal engagement in — or tangible benefit derived from — required services, the record provides a sound and substantial basis for the court's determination that termination of parental rights was in the children's best interests (see Matter of Daimeon MM. [Laurie MM.], 230 AD3d 1416, 1419-1420 [3d Dept 2024], lv denied 42 NY3d 910 [2025]; Matter of Cordell M. [Cheryl O.], 150 AD3d 1424, 1425-1426 [3d Dept 2017]).
Reynolds Fitzgerald, McShan, Powers and Mackey, JJ., concur.
ORDERED that the order, as modified by Family Court's July 9, 2025 order, is affirmed, without costs.

Footnotes

Footnote 1: Evidence admitted at the dispositional hearing shows that all three children were born with positive toxicology.

Footnote 2: In July 2025, the assigned appellate attorney for the eldest child successfully moved to vacate the dispositional order as to him, arguing that he was denied the effective assistance of counsel. A new dispositional hearing was later held, and the parents' parental rights as to that child were again terminated in October 2025. This appeal is thus moot with respect to the eldest child (see Matter of Adonis I. [Steve I.], 222 AD3d 1240, 1241 [3d Dept 2023]). We note that appeals from the foregoing orders are pending perfection before this Court.

Footnote 3: The parents were required to submit to drug screenings prior to their visits.

Footnote 4: Subsequent permanency orders available to this Court reflect that the foster mother and her spouse have proceeded with the preadoption process. The record also suggests that any such expression of hesitancy was related to the eldest child, based upon his stated desire not to be adopted. As noted above, the eldest child is no longer a subject of this appeal.